144

TRUSTEES OF ASBURY UNITED METHODIST CHURCH
v.
TAYLOR & PARRISH, INC.
Record No. 940162

TAYLOR & PARRISH, INC.
v.
TRUSTEES OF ASBURY UNITED METHODIST CHURCH
Record No. 940166

January 13, 1995

Present: All the Justices

*N. Leslie Saunders, Jr. (Gary B. Patterson; Saunders, Cary & Patterson,* on briefs), for appellant. (Record No. 940162)

*Charles L. Williams (John B. Thompson; Butler, Macon, Williams, Pantele & Lowndes; Thompson & McMullan,* on brief), for appellee. (Record No. 940162)

*Charles L. Williams (John B. Thompson; Butler, Macon, Williams, Pantele & Lowndes; Thompson & McMullan,* on brief), for appellant. (Record No. 940166)

*N. Leslie Saunders, Jr. (Gary B. Patterson; Saunders, Cary & Patterson,* on briefs), for appellee. (Record No. 940166)

JUSTICE KEENAN delivered the opinion of the Court.

In these appeals, we consider whether the trial court erred in confirming an arbitration award that required payment to a

construction contractor, under the doctrine of quantum meruit, for work performed by the contractor under an invalid change order to a construction contract.

On November 16, 1988, Taylor & Parrish, Inc. (Taylor), as "Contractor," agreed to construct a project located in Chesterfield County and designated in the contract as "New Sanctuary and Education Building." The contracting "Owner" was "Asbury United Methodist Church" (the Church).

The contract provided for a "guaranteed maximum cost" to the Owner of $2,370,943, subject to adjustment for changes in the work as provided by the contract. In addition, the contract contained an arbitration clause, Paragraph 7.9.1, which provided in material part:

> All claims, disputes and other matters in question between the Contractor and the Owner arising out of, or relating to, the Contract Documents or the breach thereof . . . shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise.

On November 2, 1990, Taylor submitted a Demand for Arbitration pursuant to the arbitration clause. Taylor alleged that the Church had made numerous changes to the construction work by a change order dated June 29, 1990 (the June 1990 change order), which increased the guaranteed maximum cost of the work. Taylor alleged that it was owed $362,462.28 as a result of the change order "under the [c]ontract," and that the Church had "breached the [c]ontract" by failing to tender this additional amount.

On December 4, 1990, the "Trustees of Asbury United Methodist Church" (the Trustees) filed a motion for declaratory judgment in the trial court. The Trustees alleged they "own[ed]" the real estate on which the construction work was done and that, at a duly held church conference meeting, they had been authorized to encumber the property and contract with Taylor for the improvements.[1] The Trustees further alleged, however, that Taylor was entitled only to the "guaranteed maximum cost," as adjusted, and

---

[1] The Trustees did not allege that they had obtained a circuit court order, pursuant to Code § 57-15, authorizing the encumbrance and improvement of the land. Nevertheless,

they asked the trial court to declare that the June 1990 change order under which Taylor claimed additional charges was invalid, because it had been signed without the authority of the church congregation.

Taylor replied to the declaratory judgment action by seeking an order compelling arbitration, pursuant to Code § 8.01-581.02(A). The trial court ordered the parties to arbitrate, ruling that the arbitration clause was broad enough to encompass the parties' dispute regarding the validity of the June 1990 change order.

The arbitrator, Orran Lee Brown, conducted two days of hearings and issued a "Decision of Arbitrator" dated August 19, 1991. Brown found that the June 1990 change order had been signed by two of the trustees for the Church who had no actual or apparent authority to bind the Church. Citing Code § 57-15 and other authority, Brown concluded that, in order for any change order to be valid, Taylor was required to obtain the congregation's authorization and a circuit court's approval to bind the Church contractually for improvements to the Church's property. Thus, Brown ruled that the Church was not obligated by the terms of the June 1990 change order "as a contractual matter." However, Brown also stated that Taylor could seek recovery based on quantum meruit for the value of its services, and he granted Taylor leave to arbitrate such a claim.

The Trustees asked the trial court to confirm the arbitrator's ruling that the June 1990 change order was invalid, but to vacate that portion of the arbitrator's decision holding that Taylor could assert a request for quantum meruit relief. The Trustees contended that this ruling exceeded the arbitrator's powers, because it was outside the scope of the matters submitted to him by the trial court's order compelling arbitration. By order dated January 7, 1992, the trial court granted the Trustees' request confirming in part and vacating in part the arbitrator's decision. In its order, the trial court also referred the matter back to the arbitrator for apportionment of fees and costs.

Thereafter, Taylor obtained leave from the arbitrator to file an Amended Demand for Arbitration. In the Amended Demand, Taylor asserted claims based on theories of breach of contract and quantum meruit, stated in the alternative, against both the

the Trustees stipulated in the trial court and on brief in this appeal that the construction contract was valid and enforceable and "is binding between the Church and [Taylor]."

Church and several "Individual Respondents[,] in their individual rather than representative capacities," who were members of the Church's board of trustees. The arbitrator later dismissed the individual respondents as parties to the arbitration.

The Trustees opposed the Amended Demand in the trial court by seeking to enjoin Taylor from "proceeding in any manner to raise any issue other than that provided for in the Court's Order of January 7, 1992," because, they said, Taylor's Amended Demand went beyond the scope of the hearing on apportionment of fees and costs that had been ordered by the trial court.

Taylor, however, continued to seek arbitration of its Amended Demand. Pursuant to Code § 8.01-581.02(A), Taylor again applied to the trial court for an order compelling arbitration.

The trial court granted Taylor's motion and ordered arbitration. In an opinion letter dated February 12, 1992, the trial court stated,

> [A]lthough defendant's original *Demand For Arbitration* did not include the issue of *quantum meruit*, defendant did allege a breach of contract by plaintiff. Defendant's *Amended Demand* again alleges a breach of contract by plaintiff, among other allegations. Breach of contract has not been addressed by the arbitrator.
>
> The issues included in defendant's *Amended Demand* are arbitrable, therefore the Court hereby grants defendant's *Application to Stay Proceeding and to Compel Arbitration.*

On April 10, 1992, the trial court denied the Trustees' request for an injunction and ordered the parties to arbitrate "the matters set forth in the Amended Demand."

Brown, the arbitrator, then stated that "[t]he remaining [arbitration] hearing will not address the breach of contract claim, as that has been disposed of previously. The hearing will concern the claimant's allegation that Asbury has been unjustly enriched and the claimant should recover $362,462.28 an [sic] extracontractual quatum meriuit [sic] recovery."

Brown conducted hearings on the request for quantum meruit relief in October 1992 and January 1993. The transcripts of those hearings show that Brown ruled that, since there was no express and enforceable contract as to the claims for work performed under the invalid change order, a claim would lie for quantum

meruit relief for the reasonable value of that work. On March 26, 1993, Brown issued an Award of Arbitrator (the March 1993 award), stating in part:

ASBURY UNITED METHODIST CHURCH shall pay to TAYLOR & PARRISH, INC. the sum of TWO HUNDRED SIXTY-THREE THOUSAND THREE HUNDRED TEN DOLLARS AND NINETY-SEVEN CENTS ($263,310.97) . . . .

The administrative fees and expenses of the American Arbitration Association and fees for the remuneration of the arbitrator shall be borne equally by the parties. . . .

This Award is in full settlement of all claims submitted to this arbitration.

Taylor asked the trial court to enter an order confirming the March 1993 award and entering judgment in its favor. In opposition to this request, the Trustees asked the trial court to confirm the arbitrator's decision of August 19, 1991, and to vacate the March 1993 award. The Trustees argued that the arbitrator had exceeded his powers, had misapplied the law, and did not have authority to consider quantum meruit relief.

The trial court rejected the Trustees' arguments. In an opinion letter dated October 13, 1993, the trial court held that the arbitration clause in the contract was broad enough to encompass the issue of quantum meruit relief because that claim "arises out of, or relates to, the contract." The trial court further stated that the arbitrator had not exceeded the scope of the issues submitted to him by the order granting a second arbitration.

The trial court declined to enter a proposed order in which Taylor requested judgment against the Trustees and the Church, jointly and severally. Instead, the trial court's order of November 2, 1993, recited that judgment was entered in favor of Taylor "against ASBURY UNITED METHODIST CHURCH" in the amount of $263,310.97, plus interest and one half of the fees and expenses of the American Arbitration Association and the fees of the arbitrator. Both Taylor and the Trustees have appealed from this order.

## I. The Trustees' Appeal

The Trustees contend that the trial court erred in confirming the March 1993 award. They argue that the trial court was required to vacate the award under Code § 8.01-581.010(3), because the arbitrator exceeded his powers in allowing recovery on a quantum meruit basis. The Trustees assert that the remedy of quantum meruit is available only when there is no express contract between the parties.

In response, Taylor first argues that the Trustees have no standing to appeal from the trial court's order, because judgment was not entered against the Trustees, but against the Church. Taylor further contends that the trial court acted properly in construing the March 1993 award liberally and in conducting a limited review of the award. Taylor argues that, under the Construction Industry Arbitration Rules that were made a part of the contract, the arbitrator was empowered to "grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties." American Arbitration Association, Construction Industry Arbitration Rules, Rule 43 (rev. January 1, 1993).

Initially, we address Taylor's argument that the Trustees have no standing to bring this appeal, because the trial court entered judgment only against the Church, in accordance with the March 1993 award. Taylor contends that, because judgment was not entered against the Trustees, the Trustees are not "aggrieved" by the trial court's order, within the meaning of Code § 8.01-670. We disagree.

■ Code § 8.01-670 provides, in material part, that "any person may present a petition for an appeal to the Supreme Court if he believes himself aggrieved: . . . 3. By a final judgment in [a] civil case." In *Virginia Beach Beautification Commission v. Board of Zoning Appeals*, 231 Va. 415, 344 S.E.2d 899 (1986), this Court held that

[i]n order for a petitioner to be "aggrieved," it must affirmatively appear that such person had some direct interest in the subject matter of the proceeding that he seeks to attack. The petitioner "must show that he has an immediate, pecuniary and substantial interest in the litigation, and not a remote or indirect interest." . . . The word "aggrieved" in a statute contemplates a substantial grievance and means a denial of

some personal or property right, legal or equitable, or imposition of a burden or obligation upon the petitioner different from that suffered by the public generally.

*Id.* at 419-20, 344 S.E.2d at 902-03 (citations omitted).

■ The arbitrator's award was directed only to the Church, which was the entity named as "Owner" in the construction contract; however, only the Trustees were parties before the trial court, having initiated the declaratory judgment proceeding in which the order of judgment against the Church was entered. In the motion for declaratory judgment, nine individuals alleged that, "as Trustees of Asbury" United Methodist Church, they "own[ed] a parcel of real estate" on which the construction was done, and Taylor admitted this allegation of ownership in its "Grounds of Defense."

■ The nature of the Trustees' ownership interest is not shown by the record; however, acquisition and ownership of property by churches are matters governed by statute, in accordance with Article IV, § 14 of the Constitution of Virginia. Code § 57-7.1 validates transfers, including transfers of real property, for the benefit of local religious organizations. *See Norfolk Presbytery v. Bollinger*, 214 Va. 500, 506, 201 S.E.2d 752, 757 (1974) (construing former Code § 57-7).

Code § 57-8 authorizes the appointment of trustees "to effect and promote the purpose and object" of a conveyance of land, "and the legal title to such land shall for that purpose and object be vested in the trustees." Such trustees merely hold the legal title to the land for the use and benefit of the religious organization. *Globe Furniture Co. v. Trustees of Jerusalem Baptist Church*, 103 Va. 559, 561, 49 S.E. 657, 658 (1905). Thus, pursuant to statute, the Trustees held legal title, for the benefit of the Asbury United Methodist Church, to the land and improvements thereon that were the subject of the contract with Taylor.

■ The Trustees were both a party to the trial court proceedings and had a specific property interest, peculiar to themselves, in the real property that was the subject of the contract at issue. *Cf. Virginia Beach Beautification*, 231 Va. at 420, 344 S.E.2d at 903. Further, the relief they requested in the trial court proceedings effectively was denied by the entry of judgment against the Church. Thus, we conclude that the Trustees are proper parties to maintain this appeal.

■ Turning to the merits of the Trustees' appeal, we first recognize that an "arbitration award 'must be construed liberally so as to uphold it, if possible.'" *Howerin Residential Sales Corp. v. Century Realty of Tidewater, Inc.*, 235 Va. 174, 179, 365 S.E.2d 767, 770 (1988) (quoting *Sydnor Pump & Well Co. v. County Sch. Bd.*, 182 Va. 156, 167, 28 S.E.2d 33, 37 (1943)). Moreover, the party attacking an arbitrator's award bears the burden of proving the invalidity of the award. *Id.*

■ The trial court's review of an arbitration award is governed by specific statutory criteria. Code § 8.01-581.010 provides, in material part, that "[u]pon application of a party, the court shall vacate an award where: . . . 3. The arbitrators exceeded their powers."

■ Here, the order of April 10, 1992, broadly referred to the arbitrator all matters stated in the Amended Demand, which included Taylor's request for quantum meruit relief. The trial court's referral of the quantum meruit request was void, however, because the trial court could not confer jurisdiction on the arbitrator to adjudicate disputes that were not based on the parties' contract.

■ Arbitrators derive their authority solely from the parties' contractual agreement to arbitrate disputes arising under the contract. Thus, arbitrators exceed the scope of their authority when they purport to act beyond the terms of the contract from which they draw their authority. *Gordon Sel-Way, Inc. v. Spence Bros., Inc.*, 475 N.W.2d 704, 710 (Mich. 1991); *County College of Morris Staff Ass'n v. County College*, 495 A.2d 865, 869-70 (N.J. 1985); *JBC of Wyoming Corp. v. City of Cheyenne*, 843 P.2d 1190, 1196 (Wyo. 1992).

■ The contract between Taylor and the Church committed to the arbitrator's decision those "claims, disputes and other matters . . . arising out of, or relating to, the Contract Documents or the breach thereof." Paragraph 7.9.1. The term "Contract Documents" included only the parties' "Standard Form of Agreement," certain other specifically enumerated documents, and "all Modifications issued after execution of the Contract," including "a Change Order." Paragraphs 1.1, 16.2, and 1.1.1. A "Change Order," as defined by the contract, is "a written order to the Contractor signed by the *Owner* and the Architect . . . authorizing . . . an adjustment in the Contract Sum[, which] may be changed only by Change Order." Paragraph 12.1.1 (emphasis added).

In his decision of August 1991, the arbitrator ruled that the June 1990 change order had not been "signed by the Owner" because the individuals signing it had no authority to bind the Church as "Owner." This portion of the arbitrator's decision was confirmed by the trial court and, since Taylor did not object or assign error to this ruling, it has become the law of the case. *See Medical Ctr. Hosps. v. Sharpless*, 229 Va. 496, 498, 331 S.E.2d 405, 406 (1985). Thus, because the June 1990 change order was not among the "Contract Documents," Taylor's claim for quantum meruit recovery for the work performed under the invalid change order was not a claim "relating to the Contract Documents." By the parties' contract, claims not relating to the Contract Documents were not within the arbitrator's scope of authority.[2] *See Wild West Trading Co. v. gbs & h Architects, Landscape Architects, Planners, Inc.*, 881 P.2d 1070, 1074 (Wyo. 1994).

In purporting to decide whether Taylor was entitled to payment for work that had not been performed in accordance with the contract, the arbitrator exceeded the scope of the authority granted him by the parties' contract. As this Court stated in *Doyle & Russell, Inc. v. Roanoke Hospital Association*, 213 Va. 489, 193 S.E.2d 662 (1973):

[T]he extent of the duty to arbitrate, just as the initial duty to arbitrate at all, arises from contractual undertakings.

A party cannot be compelled to submit to arbitration unless he has first agreed to arbitrate. By the same token, he

---

[2] In *McMullin v. Union Land & Management Co.*, 242 Va. 337, 410 S.E.2d 636 (1991), we considered the scope of an arbitration clause contained in a partnership agreement and held that the clause was broad enough to cover a partner's claim for services. The issue in dispute was whether the claim conformed to a provision in the agreement stating that partners would be compensated for their services to the partnership only if the partners contracted for such compensation. We concluded that, "[b]ecause the litigants must refer to that provision in resolving this controversy," the dispute fell within the language of the arbitration clause covering any claim "relating to this Agreement." *Id.* at 341-42, 410 S.E.2d at 639. The present case is distinguishable from *McMullin* because here there was no claim "relating to the Contract Documents" which the arbitrator was authorized to resolve. Once the arbitrator had decided that the June 1990 change order was invalid and thus was not among the "Contract Documents," and the trial court had confirmed this decision, neither the parties nor the arbitrator had any contract provisions to which they could refer in resolving Taylor's claim.

cannot be compelled to arbitrate a question which, under his agreement, is not arbitrable.

*Id.* at 494, 193 S.E.2d at 666.

■ Thus, we hold that the trial court erred in confirming that portion of the March 1993 award which found that Taylor was entitled to $263,310.97 plus interest based on the invalid change order.

## II. Taylor's Appeal

We turn now to the single assignment of error raised by Taylor in its separate appeal. Taylor argues that the trial court erred in refusing to enter judgment against the Trustees and the Church, jointly and severally, as Taylor requested in its application to confirm the March 1993 award. We disagree.

Code § 8.01-581.011 provides that, unless the trial court grants an application to modify or correct an arbitration award, "the court shall confirm the award as made." When the court grants an order confirming an award, "a judgment or decree shall be entered in conformity therewith." Code § 8.01-581.012.

■ Taylor did not apply to the arbitrator or to the trial court to modify or correct the award, as provided in Code §§ 8.01-581.08 and 8.01-581.011. Moreover, Taylor did not name the Trustees in either of its demands for arbitration. Therefore, the trial court did not err in declining to enter a joint and several judgment which would not have conformed with the award and which impermissibly would have modified the award. *See Wessell Bros. Found. Drilling Co. v. Crossett Pub. Sch. Dist., No. 52,* 701 S.W.2d 99, 101-02 (Ark. 1985); *Thacker Constr. Co. v. A Betterway Rent-A-Car, Inc.,* 368 S.E.2d 178, 180 (Ga. Ct. App. 1988).

■ In conclusion, we will reverse that portion of the trial court's judgment confirming the arbitrator's award of $263,310.97 plus interest to Taylor and enter final judgment. We will affirm that portion of the judgment rendered in favor of Taylor in the amount of one half of fees and expenses relating to the arbitration proceeding, as the Trustees have not advanced any argument that the trial court improperly confirmed that award of costs. Finally, we will remand the case to the trial court for entry of a judgment order in favor of Taylor for a specific amount representing one

half of the fees and expenses of the American Arbitration Association and the fees of the arbitrator.

*Record No. 940162 - Reversed in part and final judgment.*
*Record No. 940166 - Affirmed in part and remanded.*