# CIRCUIT COURT OF FAIRFAX COUNTY

Coryn Weigle

    v.

The Costume Connection, Inc.

February 26, 1997

Case No. (Law) 74400

BY JUDGE STANLEY P. KLEIN

This matter comes before the Court on Coryn Weigle's Application to Confirm Arbitration Award, Respondent's Motion to Vacate or Modify Arbitration Award, and Respondent's Motion for Declaratory Judgment. The Court has considered the parties' memoranda, the authorities cited therein, and the parties' oral arguments. For the reasons set forth hereinafter, both motions are denied, the application is granted, and the arbitration award is confirmed.

This case stems from the arbitration of a dispute that arose out of the settlement of an earlier lawsuit between the parties. Coryn Weigle, t/a Mediaeval Miscellanea ("Applicant"), supplied costume patterns to The Costume Connection ("Respondent" or "TCC"). Under a Closing Memorandum entered into by the parties pursuant to their settlement agreement, the parties were to "calculate and agree on the amount of the inventory at the Post Closing Meeting." Closing Memorandum, ¶ 6. The parties also agreed that "[a]ny dispute regarding the above shall be resolved . . ." via arbitration. *Id.* at ¶ 9. The parties were unable to agree on the amount of inventory that TCC should have had on hand at the closing and submitted their dispute to arbitration.

Following a hearing, the arbitrator issued his decision finding that Respondent's inventory at the closing fell short of what it should have been pursuant to the settlement agreement. Eric Schell, the arbitrator, blamed this

discrepancy on either TCC's poor record keeping or its concealment of certain costume patterns. Accordingly, he awarded Weigle lost profits in the amount of $11,440.83 for the missing patterns.

In both its Motion to Vacate or Modify Arbitration Award and its Motion for Declaratory Judgment, TCC contends that the arbitrator exceeded his authority when he awarded Applicant damages. Pursuant to Virginia Code § 8.01-581.010, Respondent requests that the Court acknowledge this abuse of power by vacating or modifying the award and granting TCC an $11,440.83 credit. TCC argues that (1) the arbitrator was not given the power to award damages and (2) that the arbitrator misapplied Virginia law when it awarded lost profits to Weigle.

"Arbitrators derive their authority solely from the parties' contractual agreement to arbitrate disputes arising under the contract. Thus, arbitrators exceed the scope of their authority when they purport to act beyond the terms of the contract from which they draw their authority." *Trustees of Asbury United Methodist Church v. Taylor & Parrish, Inc.*, 249 Va. 144, 153 (1995). Nonetheless, to encourage the resolution of disputes through arbitration, arbitration awards should be liberally upheld. Therefore, the party attacking the award bears the burden of proving why it is flawed. *Id.*

TCC argues that the arbitrator merely had the authority to decide the amount of inventory TCC should have had on hand at the closing. The Court declines to interpret the parties' agreement as narrowly as Respondent urges. The parties' Closing Memorandum gave the arbitrator the authority "to resolve" any dispute involving the contents of that document. Moreover, the Closing Memorandum set no limits on how a resolution of a dispute could be effected. Respondent asks the Court to read a limitation into the contract that simply does not exist. To accept TCC's interpretation of the contract, the Court would have to decide that the parties intended to settle a pending lawsuit by submitting their dispute to arbitration but intended that any finding in favor of Weigle would necessarily require the filing of another lawsuit to determine the amount of damages. The Court will not interpret the Closing Memorandum in such an illogical manner. The Court finds that the arbitrator did not exceed his authority when he made an award of damages.

TCC also contends the arbitrator stepped beyond the scope of his authority when he erroneously awarded Weigle lost profits on the missing patterns. Specifically, Respondent argues that the arbitrator made a mistake in the application of Virginia law. A similar argument was rejected by the Virginia Supreme Court in *Howerin Residential Sales Corp. v. Century Realty*, 235 Va. 174 (1988). In *Howerin*, Century Realty argued that the arbitrators' "plain and palpable mistake of law" rose to the level of misconduct

for which an award should be set aside. Century Realty relied on an 1873 case which predated the controlling arbitration statute which sets forth the limited bases for setting aside an arbitration award. *Id.* at 179; *see also Remmey v. Painewebber, Inc.,* 32 F.3d 143 (4th Cir. 1994) (holding that the mere misapplication of the law is not sufficient to vacate an arbitration award). In Code § 8.01-581.010, the General Assembly has listed five specific situations in which a court should vacate an arbitration award; improper application of Virginia law, as TCC alleges, is not among those listed and, therefore, is not grounds for vacation.

Furthermore, the fact that a Court would not or could not have fashioned the same remedy, as the arbitrator did, cannot serve as the basis for setting aside an award. Va. Code § 8.01-581.010. In essence, Respondent seeks a second bite at the apple by now claiming that the arbitrator did not have the authority to decide the lost profits issue which the parties fully briefed and argued to him. This Court can only review the arbitration award for evidence that Mr. Schell exceeded the scope of the authority conferred on him by the parties through their Closing Memorandum. Finding none, this Court holds that TCC has failed to carry its burden of proof. *Trustees of Asbury United Methodist Church,* 249 Va. at 153. Accordingly, the Court denies Respondent's Motion to Vacate or Modify Arbitration Award and Motion for Declaratory Judgment and grants Weigle's application and confirms the award.