Present:   All the Justices

SIGNAL CORPORATION
                          OPINION BY JUSTICE LEROY R. HASSELL, SR.
v.  Record No. 020339              January 10, 2003

KEANE FEDERAL SYSTEMS, INC.

          FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                 Kathleen H. MacKay, Judge

                              I.

     In this appeal of a judgment confirming an arbitration

award, the primary issue that we consider is whether the

arbitrators exceeded their powers within the intendment of

Code § 8.01-581.010(3).

                              II.

     Keane Federal Systems, Inc., initiated an arbitration

proceeding against SIGNAL Corporation (SIGNAL).  Keane Federal

Systems alleged that SIGNAL wrongfully terminated its

subcontract and sought damages for breach of contract.  Keane

Federal Systems also alleged in the arbitration proceeding

that SIGNAL conspired with Keane Federal Systems' former

employees in violation of Code §§ 18.2-499 through -501,

Virginia's civil conspiracy statutes, and sought treble

damages and attorney's fees as permitted by those statutes.

     As required by a subcontract executed by the litigants,

their dispute was submitted to "binding arbitration" before a

panel of three arbitrators, who conducted a lengthy hearing

and unanimously concluded that SIGNAL breached its subcontract with Keane Federal Systems. A majority of the panel concluded that SIGNAL violated the civil conspiracy statutes. One arbitrator dissented from that portion of the panel's "memorandum opinion, order and award." The panel awarded Keane Federal Systems treble damages in the amount of $6,883,029 and attorney's fees.

As permitted by Code § 8.01-581.010, SIGNAL filed an application in the circuit court to vacate, or in the alternative, modify or correct the arbitration award. SIGNAL asserted in a memorandum in support of its application that the arbitration panel ignored the plain language of a termination clause contained in the subcontract, that the arbitration panel disregarded the requirements of Virginia's civil conspiracy statutes, and that the arbitration panel's "damages award is arbitrary and irrational." Keane Federal Systems also filed a memorandum and requested that the circuit court confirm the arbitrators' award. The circuit court considered the memoranda submitted by counsel, the decision of the panel, and oral argument of counsel. The court denied SIGNAL's motion to vacate and entered an order that confirmed the arbitrators' award. SIGNAL appeals.

III.

2

Even though the arbitration panel conducted a hearing over the course of five days, considered 139 exhibits, and issued a very lengthy opinion, only a brief recitation of the facts is necessary for our resolution of this appeal. In September 1996, the Federal Highway Administration awarded a contract to SIGNAL. Pursuant to the terms of that contract, SIGNAL agreed to provide certain information technology services to the Federal Highway Administration. The prime contract contained a paragraph entitled "key personnel," which required SIGNAL to identify certain persons who served in "key positions," the replacement of whom was subject to the prior written approval of the Federal Highway Administration.

SIGNAL and ANSTEC, Inc., signed a subcontract and pursuant to its terms, ANSTEC agreed to provide certain information technology services to SIGNAL. ANSTEC was subsequently acquired by Keane Federal Systems and, therefore, will be referred to as Keane Federal Systems for the remainder of this opinion. The subcontract contained the following termination provision:

> "In the event of a breach of a material term or condition of the subcontract, the Buyer [SIGNAL] may terminate this Subcontract in whole or in part for default. If Seller [Keane Federal Systems] fails to cure the default within 10 days after receiving a notice specifying the default, such termination may require the Buyer to reprocure the goods and services and Subcontractor will be liable for

Buyer's costs for such reprocurement, to the extent not reimbursed by the Government."

Even though Keane Federal Systems was required to submit its invoices to SIGNAL on the 11th day of each month, Keane Federal Systems failed to do so on numerous occasions. SIGNAL issued a notice to cure defects to Keane Federal Systems on May 18, 2000, and Keane Federal Systems responded the next day with a "cure plan." However, Keane Federal Systems continued to submit untimely invoices after that date. On September 15, 2000, SIGNAL informed the Federal Highway Administration that SIGNAL's subcontract with Keane Federal Systems would be terminated "for default effective the close of business on September 30, 2000. This termination is a result of [Keane Federal Systems'] failure to comply with material subcontract requirements. This failure has negatively affected SIGNAL's ability to comply with prime contract requirements and to serve [the Federal Highway Administration] to our standards." SIGNAL also informed Keane Federal Systems on September 15, 2000 that SIGNAL intended to terminate the subcontract.

The subcontract contained the following "no-hire provision" which stated:

"During the period of performance of this subcontract, and for a period of one (1) year thereafter, neither party shall solicit or engage the services of any employee of the other party engaged in performance of work related to this

4

subcontract, without expressed written notification to and acceptance by the other party."

Keane Federal Systems' employees provided computer services to SIGNAL pursuant to the terms of the subcontract. These services were described as "scarce and unusual" due to the obsolescence of the Federal Highway Administration's equipment and software. In an effort to acquire personnel who could provide these services to SIGNAL after it had terminated the subcontract with Keane Federal Systems, SIGNAL posted the job descriptions of Keane Federal Systems employees on the SIGNAL website as "job vacancies," and placed job vacancy notices outside SIGNAL's project manager's office at the Federal Highway Administration's work area.

Arthur Hazel III, Keane Federal Systems' project manager for the subcontract, had extensive interaction with Nelson Ebersole, SIGNAL's project manager on the prime contract. Hazel purportedly had a secret meeting with certain Keane Federal Systems employees, and "it became 'common knowledge' through Hazel that SIGNAL would give [Keane Federal Systems] employees who resigned from [Keane Federal Systems] prior to September 30, 2000, their present job assignments, a signing bonus of $1,500, negotiated raises, reimbursements of educational expenses owed to [Keane Federal Systems], and other benefits. Hazel relayed these offers through the team

leaders, carried draft resignation letters for each [Keane Federal Systems] employee to the various team locations and repeatedly followed up on each [Keane Federal Systems] employee who had not given him a signed resignation letter. During this period, Hazel told [Keane Federal Systems] management that he would not support [Keane Federal Systems] in discussions with [the Federal Highway Administration] because he 'did not want to rock the boat.' Meanwhile, Hazel negotiated details of SIGNAL offers to individual [Keane Federal Systems] employees."

The arbitrators made a factual finding that on September 28, 2000, Hazel surprised his Keane Federal Systems superiors by presenting them with 22 resignation letters that contained either identical or substantially similar language. These 22 employees were hired by SIGNAL at its "job fair open house," and they received bonuses, negotiated increases in compensation, and other benefits.

## IV.

### A.

SIGNAL argues that "the circuit court erred as a matter of law by failing to vacate [the] arbitration award [because] the arbitrators exceeded their powers by rewriting the subcontract." Continuing, SIGNAL contends that the arbitration panel erroneously applied "the general law of

contracts" to determine whether SIGNAL's termination of the subcontract was proper. SIGNAL asserts that the arbitration panel failed to apply the unambiguous standard for termination expressly contained in the termination clause of the subcontract. SIGNAL states that the unambiguous provision in the subcontract permitted it to terminate Keane Federal Systems "in the event of a breach of a <u>material</u> <u>term</u>" and that the subcontract's invoice and payment requirement was a material term of the subcontract.

SIGNAL also argues that the arbitrators exceeded their authority by rewriting the option clause of the subcontract. SIGNAL contends that the arbitration award "includes [$1,988,896.50] ($662,965.50 trebled) representing revenues that [Keane Federal Systems] purportedly would have received if the subcontract were extended into Option Period Four, which would have begun <u>after</u> the termination date. . . . The option clause of the subcontract required SIGNAL to exercise the option if, and only if, [Keane Federal Systems] 'has continually provided timely, quality, and within cost performance.' It is undisputed in this case, and the panel [of arbitrators] specifically found, that there were timeliness and quality problems with [Keane Federal Systems'] invoices." Continuing, SIGNAL contends that the arbitration panel failed to apply "the plain language of the option clause

7

and imposed the same common law 'material breach' standard" that it applied when the panel considered the termination clause of the subcontract.

Keane Federal Systems responds that the arbitrators did not exceed their powers and that the parties' contract conferred upon the arbitration panel the broad authority to decide "[a]ny dispute arising under or related to this subcontract with respect to the rights, duties or obligations of the parties. . . ." We agree with Keane Federal Systems.

Code § 8.01-581.010, which is a part of Virginia's Uniform Arbitration Act, states in pertinent part:

> "Upon application of a party, the court shall vacate an award where:
> "1. The award was procured by corruption, fraud or other undue means;
> "2. There was evident partiality by an arbitrator appointed as a neutral, corruption in any of the arbitrators, or misconduct prejudicing the rights of any party;
> "3. The arbitrators exceeded their powers;
> "4. The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of § 8.01-581.04, in such a way as to substantially prejudice the rights of a party; or
> "5. There was no arbitration agreement and the issue was not adversely determined in proceedings under § 8.01-581.02 and the party did not participate in the arbitration hearing without raising the objection.
>
> . . . .

8

> "If the application to vacate is denied and no motion to modify or correct the award is pending, the court shall confirm the award."

A circuit court's review of an arbitration award is limited to the specific statutory criteria contained in Virginia's Uniform Arbitration Act.  See Trustees of Asbury United Methodist Church v. Taylor & Parrish, Inc., 249 Va. 144, 153, 452 S.E.2d 847, 852 (1995).

Essentially, SIGNAL argues that the arbitrators exceeded their powers because they purportedly applied the wrong legal standard in the resolution of the contract claim.  We express no opinion regarding the correctness of the arbitrators' legal analysis.  The issue before this Court is not whether the arbitrators' conclusions were legally correct, but rather, whether the arbitrators had the power to resolve the parties' contractual claims.

We hold that the arbitrators did not exceed their powers because the issues that they resolved were within the scope of the powers conferred upon the arbitrators by the subcontract. The express language contained in the subcontract that the parties executed specifically conferred upon the arbitrators the authority to resolve "[a]ny dispute arising under or related to this subcontract with respect to the rights, duties or obligations of the parties, which is not disposed of by mutual agreement . . . ."  The parties' contractual dispute is

9

within the scope of this broad language. Therefore, neither the circuit court nor this Court may review the merits of the arbitrators' decision. A contrary conclusion would permit a dissatisfied party, who by agreement voluntarily submitted to arbitration, to invoke the jurisdiction of a circuit court in an effort to relitigate the merits of the controversy already decided by the arbitrators.

We recognize that in Trustees v. Taylor & Parrish, Inc., we held that an arbitrator exceeded his power because he acted beyond the terms of a contract that contained the arbitration agreement by resolving a claim that did not relate to the contract. We applied Code § 8.01-581.010 and invalidated the arbitration award. 249 Va. at 153-54, 452 S.E.2d at 852-53. In the present appeal, unlike the circumstances in Trustees v. Taylor & Parrish, Inc., SIGNAL does not assert that the arbitrators resolved a dispute that was beyond the scope of the arbitration agreement contained in the subcontract.

We also observe, with approval, the Supreme Court of Michigan's admonition that "an allegation that the arbitrators have exceeded their powers must be carefully evaluated in order to assure that this claim is not used as a ruse to induce the court to review the merits of the arbitrators' decision." Gordon Sel-Way, Inc. v. Spence Bros., Inc., 475 N.W.2d 704, 710 (Mich. 1991).

10

SIGNAL argues that "the circuit court erred by failing to vacate the trebling of the award based upon the majority's exceeding its authority and its manifest disregard of the Virginia Conspiracy Statute."  SIGNAL argues that the panel exhibited a " 'manifest disregard of the law' in finding statutory conspiracy in the absence of concerted action."  We disagree with SIGNAL.

As we have already held, pursuant to the arbitration provision contained in the subcontract, the arbitrators had the power to adjudicate any dispute arising under or related to the performance of the subcontract.  This provision is broad enough to include Keane Federal Systems' civil conspiracy claims.  And, as we have already stated, even though we may not agree with the arbitration panel's application of the law, the issue before this Court is whether the arbitrators exceeded their powers, and we are compelled to conclude that they did not do so.

Even though courts in other jurisdictions have vacated arbitration awards when there has been a "manifest disregard of the law," we refuse to adopt that standard in this case because to do so would require that this Court add words to Code § 8.01-581.010, which enumerates the bases on which a court shall vacate an arbitration award.  Conspicuously

missing from this statute is a provision that permits a court to vacate a judicial award when the arbitration panel has exhibited a "manifest disregard of the law." In this Commonwealth, courts are required to apply the plain meaning of statutes, and we are not free to add language, nor to ignore language, contained in statutes. We have repeatedly stated that:

> "While in the construction of statutes the constant endeavor of the courts is to ascertain and give effect to the intention of the legislature, that intention must be gathered from the words used, unless a literal construction would involve a manifest absurdity. Where the legislature has used words of a plain and definite import the courts cannot put upon them a construction which amounts to holding the legislature did not mean what it has actually expressed."

Halifax Corp. v. First Union Nat'l Bank, 262 Va. 91, 99-100, 546 S.E.2d 696, 702 (2001); Watkins v. Hall, 161 Va. 924, 930, 172 S.E. 445, 447 (1934); accord Haislip v. Southern Heritage Ins. Co., 254 Va. 265, 268, 492 S.E.2d 135, 137 (1997); Weinberg v. Given, 252 Va. 221, 225, 476 S.E.2d 502, 504 (1996); Turner v. Wexler, 244 Va. 124, 127, 418 S.E.2d 886, 887 (1992); Grillo v. Montebello Condo. Unit Owners Ass'n, 243 Va. 475, 477, 416 S.E.2d 444, 445 (1992); Barr v. Town & Country Prop., Inc., 240 Va. 292, 295, 396 S.E.2d 672, 674 (1990).

C.

SIGNAL assigns as error that "the Circuit Court erred by not modifying or correcting an arbitration decision that included damages based upon evident miscalculations of figures and evident mistakes in the description of the damages referred to in the award." SIGNAL, however, did not make this argument in its motion to vacate or in its memorandum submitted in the circuit court. SIGNAL argued in the circuit court that "the panel's damages award is arbitrary and irrational." In this Court, SIGNAL argues that the circuit court was required to modify or correct the arbitrators' award because the award "contains evident mistakes and palpable errors with no rational basis."

We will not consider SIGNAL's arguments because we conclude that they are procedurally barred. Code § 8.01-581.011 permits a circuit court to modify or correct an award when "[t]here was an evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award." SIGNAL, however, did not raise this issue in the circuit court and, therefore, may not raise this issue for the first time on appeal. Rule 5:25. SIGNAL may not raise its contention that the panel's award is arbitrary and irrational because that argument is not the subject of an assignment of error.

V.

13

We conclude that SIGNAL's arguments lack merit and, therefore, we will affirm the judgment of the circuit court.

<u>Affirmed</u>.