## CIRCUIT COURT OF FAIRFAX COUNTY

Bruce Pieper et al.

v.

Bison Building Co., L.L.C.

June 5, 2006

Case No. (Civil) 2006-294

BY JUDGE JONATHAN C. THACHER

This matter came on for hearing on May 5, 2006, pursuant to the Defendant's Motion to Vacate and/or Modify an Arbitration Award entered on November 18, 2005. Upon consideration of the arguments of counsel and the facts of this case, the Court reaches the findings and conclusions stated below.

### I. *Background*

· On February 10, 2003, Bruce and Judith Pieper entered into a contract with Bison Building Co., ("Bison") for the construction of a house located on Lot 4 in Thompson Estates in Fairfax County. The contract provided that, in exchange for the Bison's agreement "to furnish the necessary labor, material, and supervision required to complete the Scope of Work for the construction of a new single family dwelling," the Piepers would pay Bison $810,150.00. The Piepers and Bison signed and initialed all pages of the contract, including handwritten changes. The Piepers made a deposit of $10,000.00. Over the course of the next year, the parties communicated verbally and in writing regarding Bison's performance of the contract, including the closing date, changes in specifications, local government permitting, and estimated time completion.

On April 12, 2004, more than one year after the signing of the contract, Bison sent a letter to the Piepers stating the following:

We are now approaching the ability to bond the Thompson Road project and record the lots. We are reviewing all contracts with our purchasers. Your contract is a different one from the other 4 we sold. Our Standard contract specifies that, if we cannot get a permit within 6 months, we may choose to void the deal.

As we reviewed your contract we noticed that you made many changes unauthorized by us thereby voiding the contract. We are therefore choosing to void your contract. We will consider an offer from you that reflects the huge cost overruns we have been subjected to.

In a response letter, the Piepers stated that they had a binding contract with Bison and refused to make another offer. They informed Bison that they were going to purchase another home because it was clear that Bison did not intend to build the House and convey the Lot. On July 14, 2004, the Piepers purchased another home for $1,250,000.00.

On January 14, 2005, the Piepers filed a Demand for Arbitration pursuant to Section IV of the contract because they believed that Bison's letter of April 12, 2004, was an anticipatory repudiation and breach of contract, entitling the Piepers to damages. The Piepers sought $365,850.00, which represented the difference between $810,150.00, the contract purchase price, and $1,175,000.00, the fair market value of the home and lot on the date of the breach had Bison fully performed its obligations under the contract.

On October 20 and 21, 2005, James F. Lee, Jr., Esq., ("Arbitrator") conducted an arbitration hearing, where he received documentary and demonstrative exhibits and heard witness's testimony and counsels' arguments. On November 18, 2005, the Arbitrator awarded the Piepers $240,000.00 in damages, $1,875.00 in administrative fees and expenses, and post judgment interest ("Award"). In a letter dated December 2, 2005, Bison asked the Arbitrator to modify the Award because it believed the Arbitrator "erroneously assigned the wrong value to the property" and that he "applied the wrong numbers for the contract Price and the Appraisal Price." On December 14, 2005, after careful consideration including a review of the hearing record, the Award, and the parties' written submissions, the Arbitrator decided he would "not modify the Award in any respect."

## II. *Bison's Motion to Vacate the Arbitration Award*

Under Virginia's Uniform Arbitration Act, a court may vacate an arbitration award if a party can show the arbitrators exceeded their powers. Va. Code Ann. § 8.01-581.010 (Michie 2006). When reviewing an arbitration

award, the proper issue before a court is "not whether the arbitrators' conclusions were legally correct, but rather, whether the arbitrators had the power to resolve the parties' contractual claims." *SIGNAL Corp. v. Keane Federal Systems, Inc.*, 265 Va. 38, 46 (2003). The *SIGNAL* Court further stated "an allegation that that the arbitrators have exceeded their powers must be carefully evaluated in order to assure that this claim is not used as a ruse to induce the court to review the merits of the arbitrators' decision." *SIGNAL Corp.*, 265 Va. at 46 (internal citations omitted). Virginia courts recognize that "an arbitration award must be construed liberally so as to uphold it if possible and the party attacking an arbitrator's award bears the burden of proving the invalidity of the award." *Trustees of Asbury United Church v. Taylor & Parish, Inc.*, 249 Va. 144, 152-53 (1995).

Arbitrators derive their authority solely from the parties' contractual agreement to arbitrate disputes arising under the contract. *Trustees*, 249 Va. at 153. In *SIGNAL Corp.*, the case relied on by the Piepers, the issue was whether the arbitrator had exceeded the scope of authority in reviewing a non-competition clause in a subcontract for computer services. *SIGNAL Corp., supra.* The Virginia Supreme Court held that, because the subcontract expressly conferred upon the arbitrators the authority to resolve "any dispute arising under or related to this subcontract with respect to the rights, duties, or obligations of the parties," the non-competition clause was within the scope of the subcontract. *SIGNAL Corp.*, 265 Va. at 38. Conversely, in *Trustees*, cited by Bison, the Virginia Supreme Court found that a change order to a contract was invalid because it was not signed by authorized parties and, as a result, was not among the "contract documents" properly within the arbitrator's authority to review. *Trustees*, 249 Va. at 144. The Court explained that a dispute falls within the language of an arbitration clause covering "any claim relating to this Agreement" if the "litigants must refer to that provision in resolving the controversy." In *Trustees*, there was no claim "relating to the contract documents." *Id.* at 144.

In the instant case, the only issue before the Court is whether the Arbitrator's finding that Bison anticipatorily breached its duty to construct and convey the home and the lot was related to the contract documents and subject to arbitration. The contract contains standard arbitration language that "all claims or disputes between the Contractor and the Owner arising out of, or relating to the contract documents or the breach thereof shall be decided by arbitration . . . unless the parties mutually agree otherwise." (Contract ¶ IV.1.) Bison has not shown that a separate agreement was applicable to the conveyance of the lot to the Piepers and therefore outside the realm of the contract. The contract states that the "Owner shall pay the Contractor in

current fund 42% of the final sales price for the purchase of the land, *if applicable,* under a separate agreement. . . ." (Contract ¶ 1, emphasis added.) Even assuming that a separate agreement was required to convey the lot to the Piepers, Bison does not provide reasons as to why it would not be an issue that "relates to the contract documents" of which the Arbitrator had authority to review. Further, in requesting the Court to find that the Piepers did not fulfill their own obligations under the contract and/or to find that the Arbitrator awarded speculative and excessive damages, Bison is improperly asking the Court to review the merits of the arbitrators' decision. For these reasons, Bison's motion to vacate the arbitration award is denied.

### III. *Bison's Motion to Modify the Arbitration Award*

The Code of Virginia allows three situations in which an arbitration award may be modified: (1) there was an evident miscalculation of figures or an evident mistake in the description of any person, thing, or property referred to in the award; (2) the arbitrators have awarded upon a matter not submitted to them and the award may be corrected without affecting the merits of the decision upon the issues submitted; or (3) the award is imperfect in a matter of form, not affecting the merits of the controversy. Va. Code Ann. § 8.01-581.011 (Michie 2006). The Code also states that "[i]f the application is granted, the court shall modify and correct the award so as to effect its intent and shall confirm the award as so modified and corrected. Otherwise, the court shall confirm the award as made." *Id.*

Section 8.01-581.011 seems to be a catch-all statute for awards that are patently in error. Only one Virginia Court of Appeals case cites the statute and does so only with *Virginia Eastern Co. v. N. C. Monroe Constr. Co.,* 56 Va. Cir. 220 (Salem 2001); *Anteon Corp. v. BTG, Inc.,* 62 Va. Cir. 41 (Fairfax 2003); *Hilton v. Quantum Comm. Group, Inc.,* 59 Va. Cir. 163 (Fairfax 2002).

As previously stated, here, the issues decided upon by the Arbitrator related to the contract documents and, therefore, were within the scope of his authority. There is no "evident" miscalculation or "evident" mistake in the description of the property, and the Award is not imperfect in a matter of form without regard to the merits. Thus, Bison's Motion to Modify the Award is denied.