COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Felton, Judges Kelsey and McClanahan
Argued by teleconference


COMMONWEALTH OF VIRGINIA

                                      MEMORANDUM OPINION* BY
v.       Record No. 0091-10-3         CHIEF JUDGE WALTER S. FELTON, JR.
                                          AUGUST 17, 2010
DETRICK LATORRE HAIRSTON


FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
David A. Melesco, Judge

Benjamin H. Katz, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellant.

Joe Garrett (Garrett & Garrett, P.C., on brief), for appellee.


Pursuant to Code § 19.2-398, the Commonwealth appeals the pre-trial order of the Circuit

Court of the City of Danville ("trial court") granting Detrick Latorre Hairston's ("defendant")

motion to suppress evidence seized from his person following a stop of the vehicle he was driving.

The Commonwealth contends the trial court erred in ruling that defendant was illegally seized in

violation of the Fourth Amendment when Danville police officers stopped his car, commanded him

to exit his car at gunpoint, and handcuffed him.  For the following reasons, we conclude that the

trial court erred in granting defendant's motion to suppress evidence seized from him and remand

for further proceedings consistent with this opinion.

I.  BACKGROUND

On appeal of an order granting a motion to suppress, we view the evidence in the light

most favorable to the accused, the prevailing party below, granting to the evidence all reasonable

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

inferences fairly deducible therefrom. Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991). "While we are bound to review *de novo* the ultimate questions of reasonable suspicion and probable cause, we 'review findings of historical fact only for clear error and . . . give due weight to inferences drawn from those facts by resident judges and local law enforcement officers.'" Davis v. Commonwealth, 35 Va. App. 533, 538, 546 S.E.2d 252, 255 (2001) (footnote omitted) (quoting Ornelas v. United States, 517 U.S. 690, 699 (1996)).

The evidence presented at the suppression hearing established that, at 2:17 a.m. on December 27, 2008, Danville Police Officer J.L. West received a police dispatch that shots had been fired at an IHOP restaurant near the officer's location. The dispatch stated that a person had been shot and that a suspect left the scene in a "dark colored Dodge Durango with rims headed south on Westover Drive toward Riverside Drive." At the time he received the dispatch, Officer West was patrolling approximately two miles from the IHOP. He immediately proceeded north on Central Boulevard toward the area of the IHOP. He testified that there was minimal traffic in the area at that time of night. Approximately three minutes later, Officer West observed "a dark colored [Dodge] Durango on Central [Boulevard] just past the Riverside Drive . . . heading north on Central at a high rate of speed," which he estimated to be approximately eighty miles per hour. Officer West followed the Durango as it took an exit ramp onto Piedmont Drive, toward the area in which the shots had been reportedly fired. As he followed the Durango, Officer West checked its license plate tags through the DMV system and received a report that they were expired. He called for backup and continued to follow the Durango.

When the vehicle stopped at a traffic light, Officer West activated his patrol car's emergency lights. He got out of his patrol car with his gun drawn and commanded the driver of the Durango to "turn[] the vehicle off, . . . put the keys outside, . . . step out with [his] hands up[,] . . . walk backwards toward [the officer's] voice[, and then] . . . get down on his knees and

innerlock [sic] his fingers on top of his head." Defendant, the driver of the Durango, complied with the officer's commands. At that point, Officer A.K. Hairston arrived, and with his gun drawn, approached defendant from behind and placed him in handcuffs. As he did so, Officer Hairston holstered his weapon and asked defendant "if he had any weapons on his person or in the vehicle." Defendant responded that he had "a gun in his right front pocket." At that point, Officer Hairston had defendant stand up, turned him around, and noticed about an inch of the butt of a firearm protruding from the top of his front pocket. At the suppression hearing, Officer Hairston testified that, even if he had not asked defendant whether he had a weapon, he "would've been patted down before placed in the patrol vehicle."

Thereafter, defendant was charged with possession of a concealed weapon in violation of Code § 18.2-308, third offense, and possession of a firearm after having been previously convicted of a felony in violation of Code § 18.2-308.2.

Defendant filed motions to suppress evidence seized from him and any statements he made to police.[1] After hearing the officers' testimony and the argument of counsel, the trial court granted defendant's motion to suppress evidence of the firearm seized from him, stating that, "under the McCain case, it's clear to me he had a right to stop the car." See McCain v. Commonwealth, 275 Va. 546, 659 S.E.2d 512 (2008) (vehicle stopped for traffic infraction). However, the trial court further stated:

> They can stop him and they can get him out and they can frisk him
> and what you and I are struggling with how do you get him out of
> the car . . . if there's some reasonable suspicion but was not
> particularized towards him, particularized towards the car, that he
> may have a gun. I am totally uncomfortable with the way the
> Danville Police handled this. Getting citizens out and putting them

---

[1] Defendant filed two motions to suppress: one on November 4, 2009 alleging a violation of Terry v. Ohio, 392 U.S. 1 (1968), and one on November 16, 2009 alleging a violation of Miranda v. Arizona, 384 U.S. 436 (1966). The trial court's statement at the hearing indicates that it granted the motion to suppress based on Terry and denied the motion to suppress based on Miranda.

on the ground, handcuffing them, and pointing weapons at them is bothersome, particularly when it turns out he didn't have a thing to do with what happened at I-HOP and the cost analysis benefit doesn't go down well with me because I believe that people have rights and those rights are almost sacred, . . . Terry is about being detained and it just seems to me under all the facts of this case there is not enough particularization of him and it just seems to me to be completely leap frog the detention that Terry allows to go to a custody situation. . . . I believe at this point the motion as to the 4th amendment's well founded, so . . . I'm going to grant it. . . . *I'll put on the record if this ever comes back that as to the 5th amendment and what happened, . . . if I am wrong and that is proper, I do believe the questioning of him . . . I believe he was in custody and I believe they were interrogational questions, but I believe inevitable discovery and/or police safety outweigh that.*

(Emphasis added).

## II.  ANALYSIS

### A.  The Stop

"The Fourth Amendment protects 'persons' from 'unreasonable searches and seizures.'"

Jackson v. Commonwealth, 267 Va. 666, 672, 594 S.E.2d 595, 598 (2004) (quoting U.S. Const.

amend. IV).

> Whether the Fourth Amendment has been violated is a question to be determined from all the circumstances.  Review of the existence of probable cause or reasonable suspicion involves application of an objective rather than a subjective standard.
>
> Under well-settled principles of law, police officers may stop a person for the purpose of investigating possible criminal behavior even though no probable cause exists for an arrest.  A stop is permissible so long as the officer has reasonable, articulable suspicion that criminal activity may be afoot.

McCain, 275 Va. at 552, 659 S.E.2d at 515-16 (citations omitted) (citing Terry v. Ohio, 392 U.S. 1,

21-22 (1968)); see also id. at 553, 659 S.E.2d at 516 ("An officer may effect a traffic stop when he

has reasonable suspicion to believe a traffic or equipment violation has occurred.").

Here, Officer West received a police dispatch at 2:17 a.m. that someone had been shot at a nearby restaurant and that a suspect was seen leaving the scene in a dark-colored Dodge Durango headed toward Riverside Drive. The officer proceeded toward the area where the shots were fired. It was very early in the morning, and there was not much traffic in the area. Within three minutes of receiving the dispatch, Officer West observed a vehicle matching the description of the suspect's vehicle moving at a high rate of speed, well in excess of the speed limit, on Central Boulevard just past Riverside Drive. As he followed that vehicle, he received a report that its registration had expired.

Based on these facts, we conclude, as did the trial court, that the vehicle's matching description and proximity to the shooting, as well as its driver's observed traffic offenses, provided a valid basis for the officer stopping the Durango driven by defendant.

### B. The Detention

The Commonwealth argues that the trial court erred in finding that the manner in which defendant was stopped, commanded to exit his vehicle at gunpoint, and handcuffed exceeded the bounds of Terry. We agree.

> During the course of a traffic stop, an officer may take certain steps to protect himself, such as asking the driver and any passengers to exit the vehicle. "[P]olice officers may also detain passengers beside an automobile until the completion of a lawful traffic stop." An officer's authority to order an occupant from a vehicle during a traffic stop is justified by the potential risks associated with traffic investigation that implicate safety concerns.

McCain, 275 Va. at 553, 659 S.E.2d at 516 (alteration in original) (citations omitted) (quoting Harris v. Commonwealth, 27 Va. App. 554, 562, 500 S.E.2d 257, 261 (1998)).

The record shows that at the time Officer West stopped the Durango driven by defendant, he had probable cause to arrest defendant on two separate traffic offenses. See Virginia v. Moore, 553 U.S. 164, 176 (2008) ("[W]arrantless arrests for [even minor] crimes committed in

- 5 -

the presence of an arresting officer are reasonable under the Constitution . . . ."); see also Parker v. Commonwealth, 255 Va. 96, 105-06, 496 S.E.2d 47, 53 (1998) (where there is probable cause to arrest, search incident to arrest constitutionally permissible even when search occurs immediately prior to formal arrest).  Moreover, given the radio dispatch he had received only moments before he observed defendant's speeding vehicle, he had reason to believe the operator of that vehicle might be armed and dangerous.

> An officer who draws his gun, like an officer who frisks, need not be absolutely certain that the suspect is armed; "the issue is whether a reasonably prudent man under the circumstances would be warranted in the belief that his safety or that of others was in danger."  An officer's belief that a suspect may be armed and dangerous can be predicated on the nature of the criminal activity involved.

Wells v. Commonwealth, 6 Va. App. 541, 554-55, 371 S.E.2d 19, 26 (1988) (quoting United States v. Jackson, 652 F.2d 244, 249 (2d Cir. 1981)).

Based on the record on appeal, we conclude that the trial court erred in finding that the officers lacked a reasonable, articulable suspicion that the driver of the vehicle matching the description of the shooter's vehicle, found in close proximity (temporal and geographic) to the shooting, was armed and dangerous and that the officers exceeded the bounds of Terry in the manner in which they detained him.  "Such detention was neither unreasonable nor conducted under circumstances that constituted the functional equivalent of an arrest."  Thomas v. Commonwealth, 16 Va. App. 851, 858, 434 S.E.2d 319, 323 (1993) (placing suspect in handcuffs during Terry stop justified where violent crime had just occurred in immediate vicinity and accused, behaving suspiciously, matched description of suspect), aff'd on reh'g en banc, 18 Va. App. 454, 444 S.E.2d 275 (1994).  Accordingly, we conclude the trial court erred in granting defendant's motion to suppress.

## C. The Trial Court's Alternative Ruling

The fact that the firearm was discovered by the officer after asking defendant if he possessed a weapon does not alter our analysis. Officer Hairston testified that he would have frisked defendant had he not been told about and seen the gun. The trial court ruled alternatively, that if on appeal the officers' conduct in executing the stop and subsequent detention of defendant were to be found to be within the bounds of Terry, the fact that defendant was asked if he had a weapon without being given Miranda warnings would not be a basis for suppressing the firearm evidence as it would have been inevitably found by the officers. The trial court stated, "I believe he was in custody and I believe they were interrogational questions, but I believe inevitable discovery and/or police safety outweigh that."[2] As defendant did not challenge this ruling in the trial court or on appeal, it has become the law of the case as to that issue. See Commonwealth v. Washington, 263 Va. 298, 304, 559 S.E.2d 636, 639 (2002) ("[A] litigant must object to a ruling of the circuit court if that litigant desires to challenge the ruling upon appeal."); Trustees of Asbury United Methodist Church v. Taylor & Parrish, Inc., 249 Va. 144, 154, 452 S.E.2d 847, 852 (1995) ("[S]ince [party] did not object or assign error to [the circuit court's] ruling, it has become the law of the case."). Accordingly, the trial court's ruling, not objected to by defendant nor assigned as cross-error on appeal, that the firearm would have been admissible under the inevitable discovery doctrine, despite failure to give Miranda warnings, is the law of the case and binding on us on appeal.[3]

---

[2] See generally Commonwealth v. Jones, 267 Va. 532, 535-38, 593 S.E.2d 204, 206-08 (2004) (tracing history of inevitable discovery doctrine and its application in Virginia).

[3] Given our ruling, we need not address whether defendant's claimed violation of Miranda would have warranted judicial suppression of the weapon. See United States v. Patane, 542 U.S. 630, 636 (2004) (plurality opinion) ("The Self-Incrimination Clause, however, is not implicated by the admission into evidence of the physical fruit of a voluntary statement."); United States v. Sterling, 283 F.3d 216, 219 (4th Cir. 2002); see also Rowley v. Commonwealth, 48 Va. App. 181, 183, 629 S.E.2d 188, 189 (2006) ("In short, the privilege against

### III.  CONCLUSION

For the foregoing reasons, we reverse the trial court's ruling suppressing the evidence and remand for further proceedings consistent with this opinion.

Reversed and remanded.

---

self-incrimination is simply 'not concerned with nontestimonial evidence.'" (quoting <u>Oregon v. Elstad</u>, 470 U.S. 298, 304 (1985))).