Present: All the Justices

DAVID M. BATES

OPINION BY
v. Record Nos. 042228 & 042639   JUSTICE CYNTHIA D. KINSER
June 9, 2005
JOHN B. McQUEEN, D/B/A
CYPRESS SPRINGS LOGGING

FROM THE CIRCUIT COURT OF SURRY COUNTY
Samuel E. Campbell, Judge


The primary issue in these appeals concerns the failure of arbitrators to conduct a hearing. The appellant, David M. Bates, challenges both the circuit court's judgment affirming an arbitration award in favor of the appellee, John B. McQueen, d/b/a Cypress Springs Logging, and the circuit court's award of attorney's fees to McQueen. Because we conclude that a hearing is required by the terms of Code §§ 8.01-581.04 and -581.010(4), and because the issue of attorney's fees must be decided by arbitrators, we will reverse the judgments of the circuit court.

MATERIAL FACTS AND PROCEEDINGS

Bates and McQueen entered into a written "TIMBER SALE AGREEMENT" (the Agreement) dated September 6, 2001, in which McQueen agreed to purchase certain trees located on a parcel of real estate situated in Surry County and owned by

Bates.[1]  As pertinent to the issue on appeal, the Agreement

contained the following provision regarding arbitration:

> ARBITRATION:  Should any disagreement arise under or
> by virtue of this contract concerning the cutting
> operation contemplated herein, each of the parties
> hereto, his or its heirs, executors, administrators,
> successors or assigns agree to arbitrate the
> controversy and submit the controversy to two
> disinterested arbitrators, one to be chosen by each of
> the parties, and, in case they disagree, the two shall
> choose a third disinterested arbitrator, and the
> decision of two of the arbitrators shall be final and
> binding upon all the parties after it has been
> rendered in writing.

Soon after McQueen commenced the timber harvest, a

dispute arose between the parties about the "cutting

operation."  Pursuant to the terms of the Agreement, each

party selected an arbitrator.  The two arbitrators, who

were both familiar with timber harvesting operations, were

unable to agree upon a resolution of the dispute, and each

therefore submitted a written report outlining their

respective determinations.  While one report showed no

date, the other report was dated December 10, 2001.  At

some point thereafter, the two arbitrators appointed a

third arbitrator as required by the terms of the Agreement.

Before the third arbitrator, a registered forester,

---

[1] The name of the buyer listed in the Agreement is
Cypress Springs Logging, Inc., not John B. McQueen, d/b/a
Cypress Springs Logging.  There is no issue before us
concerning this discrepancy.  Thus, we will treat the
corporate entity and McQueen as one and the same, as do the
parties.

submitted a written report, McQueen filed a motion for judgment against Bates on January 30, 2002. More than a year later, the third arbitrator sent a report to the other two arbitrators. McQueen's designated arbitrator subsequently indicated in writing his agreement with the third arbitrator's recommendations.

In McQueen's motion for judgment, he alleged that Bates had breached the Agreement by blocking McQueen's access to the timber, thereby preventing McQueen from completing the timber harvest and forcing him to expend additional time to remove the timber that he had cut. In response, Bates filed a grounds of defense and a counterclaim. In the counterclaim, Bates alleged that McQueen had breached the Agreement by clearing logging decks in locations on the property that Bates had not approved, by cutting timber that was not included in the sale, and by damaging Bates' property.

After the action was scheduled for trial, the circuit court entered an order appointing a new third arbitrator. According to the order, the two arbitrators originally selected by the parties had agreed to the appointment of Delmer D. Aylor as the new third arbitrator. The order also set forth the following relevant directives:

3

> Delmer Aylor shall advise the respective parties of the hearing date of the arbitration, providing the respective parties with a minimum of 10 days prior notice of the hearing date, and that the arbitration shall be conducted in accordance with the provisions of Sections 8.01-581.01 through 8.01-581.016 of the Code of Virginia, 1950, as amended.

Neither party objected to the order or its terms. In fact, the order reflects that both parties asked for its entry.

The parties do not dispute that, after Aylor's appointment, he met with Bates for approximately two hours and viewed areas on Bates' property allegedly affected by McQueen's timber cutting. The parties further agree that Bates also provided some information to the arbitrator whom he had originally selected.

Approximately six months after Aylor's appointment, he and the arbitrator originally selected by McQueen issued a joint letter setting forth their resolution of the dispute between Bates and McQueen. In relevant part, the letter stated:

> It has been determined by two forestry consultants that there is approximately $20,000.00 of timber remaining under the above mentioned agreement. We have agreed that Mr. David M. Bates shall pay Mr. John B. McQueen $14,000.00 for the uncut portion of the timber covered under the above noted agreement. Mr. David M. Bates may retain $6,000.00 of this remaining settlement to repair the damaged game trails and any other damage that he may want to repair. Mr. Bates will also retain ownership of

4

the remaining timber covered under this agreement after the $14,000.00 payment has been made.

Bates subsequently filed a motion to vacate the arbitrators' award and to appoint a new arbitrator or arbitrators to hear and decide the dispute between the parties. In his motion, Bates asserted that the arbitrators had not conducted the arbitration in accordance with the circuit court's order and Virginia's Uniform Arbitration Act, Code §§ 8.01-581.01 through -581.016, (the Act) because the arbitrators did not conduct a hearing; did not give any notice of a hearing to Bates or his counsel; and did not afford Bates an opportunity to be heard, to present evidence, or to cross-examine witnesses.

At a hearing on Bates' motion, the parties stipulated that "there was no hearing, no opportunity to present witnesses, no opportunity to cross-examin[e] witnesses or be represented by counsel." The circuit court denied the motion and entered an order confirming the arbitrators' award and directing Bates to pay McQueen the sum of $14,000. The court also granted McQueen 60 days in which to file a motion for his costs and attorney's fees. Despite Bates' subsequent objection that only the arbitrators could award attorney's fees and did not do so, the circuit court concluded McQueen was entitled to an

5

award of attorney's fees in the amount of $10,000 and certain costs. The circuit court questioned whether the Act "would permit [it] to go beyond the contract[] [b]ecause it looks like the arbitrators could have done it all" but nevertheless decided that the "contract was broad enough for attorney's fees." These appeals ensued.

ANALYSIS

On appeal, Bates raises two issues: (1) whether the circuit court erred in affirming the arbitrators' award that resulted from an arbitration proceeding that did not comply with the provisions of the Act; and (2) whether the circuit court erred in awarding attorney's fees to McQueen. We will address the issues in that order. In doing so, we are mindful that the party attacking an arbitration award "bears the burden of proving the invalidity of the award." Trustees of Asbury United Methodist Church v. Taylor & Parrish, Inc., 249 Va. 144, 153, 452 S.E.2d 847, 852 (1995) (citing Howerin Residential Sales Corp. v. Century Realty of Tidewater, Inc., 235 Va. 174, 179, 365 S.E.2d 767, 770 (1988)).

As an initial matter, McQueen argues that, while the Agreement required a dispute about the "cutting operation" to be resolved by arbitration, it did not specify any procedures for conducting the arbitration proceeding, such

6

as a formal hearing.  Thus, according to McQueen, the circuit court had no authority to impose the requirement of a hearing and the failure to conduct one was harmless error.  That argument has no merit in light of the terms of the circuit court's order appointing Aylor as the third arbitrator and directing that the arbitration be conducted in accordance with the provisions of the Act.  Both parties requested entry of that order.  Thus, the arbitration of the present dispute concerning the "cutting operation," irrespective of the terms of the Agreement, had to comply with the provisions of the Act.[2]  See Code § 8.01-581.04 (setting out certain procedural requirements for an arbitration proceeding "[u]nless otherwise provided by the agreement").

In pertinent part, the Act requires arbitrators, unless otherwise provided by an agreement, to "appoint a time and place for the hearing and cause notification to the parties to be served personally or by registered mail

---

[2] As a preliminary matter, McQueen also contends that Bates' motion to vacate the arbitrators' award did not comply with the procedural requirements of Code § 8.01-581.010 because Bates styled his pleading as a "motion" rather than as a "petition" and because he did not cite or otherwise address any of the statutory criteria set forth in that provision.  This argument has no merit.  Bates stated in his motion that the arbitrators failed to follow the provisions of the Act because there was no hearing; no notice of a hearing; and no opportunity to be heard, to present evidence, or to cross-examine witnesses.

7

not less than five days before the hearing." Code §8.01-581.04(1). Continuing, "[t]he parties are entitled to be heard, to present evidence material to the controversy and to cross-examine witnesses appearing at the hearing." Code § 8.01-581.04(2). A party also has the right to be represented by an attorney at any hearing conducted under the Act. Code § 8.01-581.05.

Despite these statutorily-mandated requirements, the terms of the circuit court's order, and the parties' stipulation before the circuit court that there was no hearing; no notice of a hearing; and no opportunity to be heard, to present evidence, and to cross-examine witnesses, McQueen contends that the circuit court did not err by refusing to vacate the arbitrators' award. This is so, according to McQueen, because Bates failed to show that he suffered any prejudice as a result of the informal manner in which the arbitrators in this case conducted the arbitration proceeding. McQueen also argues that Bates "waived and/or is estopped" from complaining about the arbitrators' failure to conduct a formal hearing because Bates participated in the informal process by meeting with and/or supplying information to two of the three arbitrators and by failing to request a formal hearing

before the arbitrators.  We do not agree with McQueen's arguments.

The provisions of Code § 8.01-581.010 provide the exclusive circumstances under which a circuit court can vacate an arbitration award.  Lackman v. Long & Foster Real Estate, Inc., 266 Va. 20, 26, 580 S.E.2d 818, 822 (2003); see also Signal Corp. v. Keane Fed. Sys., Inc., 265 Va. 38, 45, 574 S.E.2d 253, 256 (2003) ("circuit court's review of an arbitration award is limited to the specific statutory criteria contained in Virginia's Uniform Arbitration Act"); Trustees of Asbury United Methodist Church, 249 Va. at 153, 452 S.E.2d at 852 (same).  As relevant to this case, a circuit court shall vacate an arbitration award when "[t]he arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of § 8.01-581.04, in such a way as to substantially prejudice the rights of a party[.]"  Code § 8.01-581.010(4).

The repeated use of the term "the hearing" in Code § 8.01-581.010(4) presupposes that the arbitrators conducted a hearing.  However, as the parties stipulated, there was no hearing before the arbitrators in this case. Without "the hearing" having taken place, it was not

9

necessary for Bates to prove that his rights were "substantially prejudice[d]" or that evidence he would have presented was "material to the controversy" in order to have the arbitration award vacated under Code § 8.01-581.010(4).  Nor did Bates waive his objection to the lack of a hearing.  He raised the issue in his motion to vacate the arbitration award, which was the first opportunity to do so after the arbitrators decided the dispute without conducting a hearing.  Thus, we conclude that the circuit court erred by failing to vacate the arbitration award. Cf. Cargill v. Northwestern Nat'l Ins. Co., 462 A.2d 833, 834-35 (Pa. 1983) (at common law, the denial of a hearing is sufficient basis to vacate an arbitration award).  In short, the failure to conduct "the hearing" clearly intended by the terms of Code § 8.01-581.04, unless otherwise provided by an agreement, and by the provisions of Code § 8.01-581.010(4) was tantamount to no arbitration. Unless parties agree otherwise, a hearing is a fundamental part of the arbitration process because "[t]he arbitrators are the final judges of both law and fact, their award not being subject to reversal for a mistake of either."  Id.; see Signal Corp., 265 Va. at 46, 574 S.E.2d at 257 (refusing to adopt "manifest disregard of the law" as basis to vacate arbitration award).

Turning now to Bates' challenge to the circuit court's award of attorney's fees to McQueen, we conclude that the question whether McQueen is entitled to an award of attorney's fees under the terms of the Agreement, and if so, the amount of that award, is a matter to be determined by arbitration.  Cf. Lee v. Mulford, 269 Va. 562, 567-68, 611 S.E.2d 349, 352 (2005) ("Absent agreement of the parties with the concurrence of the court, or pursuant to contract or statute with specific provisions, a litigant is not entitled to bifurcate the issues and have the matter of attorney's fees decided by the trial court in post-verdict proceedings.").  The parties agreed to arbitrate any disagreement "concerning the cutting operation" under the Agreement.  The dispute between the parties entailed, in part, the question of McQueen's access to the property.  Among other things, Bates' "representations and warranties" to McQueen in the Agreement included "adequate vehicular access from the sale area to a public road," the breach of which subjected Bates to payment of attorney's fees incurred by McQueen in connection with the default.  We note, however, that the provisions of Code § 8.01-581.012 provide that the "[c]osts of the application [to confirm, modify, or correct an arbitration award] and of the

11

proceedings subsequent thereto, and disbursements may be awarded by the court."

CONCLUSION

For the reasons stated, we will reverse the judgments of the circuit court and remand for further proceedings consistent with this opinion.  Since the arbitration award will be vacated on the grounds set forth in Code § 8.01-581.010(4), the circuit court may order a hearing before the original arbitrators or "their successors appointed in accordance with § 8.01-581.03."  Code § 8.01-581.010(5).

Reversed and remanded.

12