Present:  All the Justices

CHARLES L. CALCOTE

v.  Record No. 050312     OPINION BY JUSTICE ELIZABETH B. LACY
                              November 4, 2005
FRASER FORBES COMPANY, LLC

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Leslie M. Alden, Judge

In this appeal, we consider whether the trial court correctly applied the terms of an arbitration award in determining amounts due under the award.

FACTS AND PROCEEDINGS

Charles L. Calcote worked under a Broker-Independent Contractor Agreement (the Contract) for Fraser Forbes Company, LLC (Fraser Forbes), a broker of deals for raw land.  When Calcote terminated the Contract, Fraser Forbes refused to pay Calcote commissions on any transactions that had not closed prior to termination, asserting that the Contract did not provide for such payments.  The parties submitted this dispute to arbitration in the District of Columbia as provided in the Contract.

After considering evidence and arguments of the parties, the Arbitrator filed his award on July 24, 2003 (the Award) holding that, in entering the Contract, Calcote and Fraser Forbes adopted the industry practice of "pay when paid" and that the "Contract requires the payment of commissions, less

management fees, on all transactions having fully executed contracts for sale prior to the termination of the Contract, which commissions must be paid at the end of the month in which Fraser Forbes receives its commission for those transactions." The Award specifically recited in Paragraph 15(a) that Fraser Forbes owed Calcote $102,524.73 in commissions on closed transactions for which Calcote had produced fully executed contracts prior to termination. For eight other transactions for which Calcote had produced fully executed contracts but had not yet closed prior to termination, Paragraph 15(b) of the Award set out a method of calculating the commissions due Calcote when the transactions did close and Fraser Forbes received the commission. Paragraph 15, subsections (d) and (e) of the Award, gave Calcote attorneys' fees and assigned the costs of the arbitration to Fraser Forbes, respectively.

Neither Fraser Forbes nor Calcote sought clarification or modification of the Award from the Arbitrator, but Fraser Forbes filed a motion in the Superior Court of the District of Columbia to vacate the Award. The court denied the motion and confirmed the Award in an order entered January 30, 2004.

In February 2004, Calcote filed an authenticated copy of the District of Columbia judgment along with a copy of the Award in the Circuit Court of Fairfax County pursuant to

2

Virginia's Uniform Enforcement of Foreign Judgments Act, Code §§ 8.01-465.1 through -465.5. Fraser Forbes, which had appealed the District of Columbia Superior Court's order, filed an emergency motion to suspend the domesticated judgment during the pendency of the appeal.[1] The trial court granted this motion and suspended the domesticated judgment pending termination of the appeal process.

In July 2004, Fraser Forbes paid Calcote the amounts owed under Paragraph 15, subsections (a), (d), and (e) of the Award. Fraser Forbes and Calcote then executed an agreed dismissal with prejudice and, based on this agreement, the District of Columbia Court of Appeals dismissed Fraser Forbes' appeal on August 5, 2004.

Calcote thereafter filed a partial judgment release and a motion to release the previously entered suspending order so that he could collect amounts allegedly due for two of the eight transactions identified in Paragraph 15(b) of the Award, the Corro and Reston transactions. These transactions had closed subsequent to the entry of the Award. Fraser Forbes objected to the release of the suspending order and filed a motion to have the judgment marked "as fully satisfied through

---

[1] Calcote instituted a parallel proceeding in the Circuit Court for Loudoun County, which that court also suspended. Because the Fairfax Court scheduled its hearing date first,

the present."  Fraser Forbes argued that it had paid Calcote the commissions due on the Corro and Reston transactions.

Calcote responded that the amounts he received from Fraser Forbes for the Corro and Reston transactions, $54,054.29 and $3,210.19, respectively, only partially satisfied the judgment as to these transactions because, under the terms of the Award, he was entitled to commissions of $141,922 for the Corro transaction and $4,774 for the Reston transaction.

Following a hearing on the respective motions, the trial court entered an order vacating the suspending order and marking the judgment satisfied with respect to the amounts paid pursuant to Paragraph 15, subsections (a), (d), and (e) and the Corro and Reston transactions.  The trial court's order also provided that the commissions due Calcote on any remaining Paragraph 15(b) transactions "shall be computed in a manner consistent with the Broker-Independent Contractor Agreement between the parties dated August 21, 1997, including Exhibits A and B thereto, and the manner in which the recently paid and satisfied amounts [for the Corro and Reston transactions] were computed."

---

Fraser Forbes agreed to allow the Fairfax Court to decide subsequent motions.

Calcote filed a motion for reconsideration, arguing that the calculations the trial court used to mark the judgment satisfied and to determine commissions on future transactions were not consistent with the provisions of the Award and that the Full Faith and Credit Clause, U.S. Const. art. IV, § 1, precluded the trial court from consulting extrinsic evidence to interpret the unambiguous Award. The trial court denied Calcote's motion and Calcote filed a timely appeal with this Court.

DISCUSSION

The power to modify an arbitration award is very limited. See, e.g., Va. Code §§ 8.01-581.010 and -581.011; D.C. Code § 16-4311. The Award in this case has been confirmed and has been embodied in a final judgment of another jurisdiction. The parties agree that the trial court, in determining whether any part of the Award had been satisfied, was required to apply the terms of the arbitration award and the court did not have the authority to consider the issues resolved by the Award or otherwise change the Award. The parties also agree that the District of Columbia judgment confirming the Award is entitled to full faith and credit by the courts of this Commonwealth. They agree on the amounts of gross commissions that Fraser Forbes received for the two completed transactions at issue, and they agree that Fraser Forbes is entitled to a

5

10% management fee on these transactions.  The sole point of disagreement between the parties is whether the trial court properly applied the terms of the Award, specifically the provisions of Paragraph 15(b).

Paragraph 15(b) of the Award provides:

RESPONDENT, Fraser Forbes, LLC shall pay CLAIMANT, Charles Lee Calcote, the indicated portion of the gross commission to Fraser Forbes LLC for each of the following transactions, at the end of the month in which the commission for the transaction is received by Fraser Forbes, less the management fee, provided Fraser Forbes receives the commission:

    i.  Sale of the Brandt Property to Richmond America Homes or assigns pursuant to contract dated July 31, 2002 (50%);*
    ii.  Sale of Alphin Property to Joe Bane, Jr. pursuant to contract of January 14, 2002 (50%);*
    iii.  Sale of the Corro Property to Carr Homes pursuant to a contract dated December 14, 2001 (50%);*
    iv.  Sale of Gilbert's Corner to Holtzman Oil in sales contract dated March 22, 2002 (50%);*
    v.  Sale of Mahoney (Brundred) property to Richmond America Homes pursuant to a contract dated April 30, 2002 (65%);*
    vi.  Sale of Moore Property to Classic Concepts pursuant to contract dated June 27, 2002 (50%);*
    vii.  Sale of 1246 Reston Avenue to Keystone, L.L.C. (25%);* and
    viii.  Sale of Royal Oaks pursuant to contract dated March 23, 2000 (100%).*

    *The percentage of the gross commission to Fraser Forbes that is to be paid to Charles Calcote may be adjusted upward in accordance with Exhibit A to the Contract if the aggregate Agent Commission Dollars exceed THIRTY SEVEN THOUSAND FIVE HUNDRED DOLLARS AND NO CENTS ($37,500.00) in any given year.

Calcote argues that the calculation methodology set out in Paragraph 15(b) of the Award requires that he be paid the

6

enumerated percentage of the gross commissions Fraser Forbes receives for each specific transaction, less a 10% management fee.  The Award then allows that amount to be "adjusted upward" by applying Exhibit A to the Contract if Calcote's aggregate commissions exceed $37,500 in any given year.[2]

According to Calcote, the trial court did not apply the methodology set out in Paragraph 15(b) when it determined that Fraser Forbes had satisfied its debt to Calcote on the Corro and Reston transactions nor when it instructed the parties on calculating future transactions.  Instead, as stated in the final order, the trial court based its calculations on an application of the provisions of the Contract and its Exhibits A and B.  These rulings, Calcote asserts, were erroneous.

Fraser Forbes responds by presenting various arguments in support of the trial court's order.  First, Fraser Forbes argues that "[t]he four corners of the Award support the Trial Court's findings that commissions . . . are to be paid in accordance with the [Contract], including . . . Exhibits A and B."  Fraser Forbes explains that the Contract provided a two-step approach in determining the amount of commission to which an agent was entitled in each transaction.  The first step was to apply a percentage to the gross commission Fraser Forbes received for the transaction based on the level of the agent's

_____

[2] Exhibit A is attached as an addendum to this opinion.

involvement in the transaction.  These percentages were contained in Exhibit B to the Contract.  The resulting figure became the "agent split."  The second step was to subject the "agent split" to a second percentage calculation, contained in Exhibit A to the Contract, based on the overall commissions the agent earned during a calendar year.  The resulting figure represented the amount of commission an agent received for the transaction.

Fraser Forbes argues that the calculations described in Paragraph 15(b) of the Award follow this same two-step procedure.  Asserting that the percentages contained in Paragraph 15(b) are "in lieu of Exhibit B" to the Contract, Fraser Forbes identifies the first step as multiplying the gross commissions it received by the percentage listed following each of the contingent transactions.  The next step, according to Fraser Forbes, requires applying the percentages in Exhibit A to the figure obtained in the first step as directed by the asterisked sentence in the Award.  The resulting figure is the amount of commission to which Calcote is entitled.  Fraser Forbes contends that the Arbitrator used this methodology to arrive at the amount of commissions due Calcote on transactions that had closed prior to his termination as set out in Paragraph 15(a).

8

While Fraser Forbes' explanation may reflect the proper interpretation of the Contract between the parties, the parties' past practices, and even the intent of the Arbitrator, it does not reflect the terms prescribed in the Award. The Award does not indicate that the percentage following each transaction in Paragraph 15(b) is "in lieu of" Exhibit B to the Contract; nor does the Award direct that Exhibit A be applied to the figure obtained by multiplying the gross commissions by the percentages in Paragraph 15(b). Furthermore, although Exhibit A contains a series of percentage commission splits between an agent and Fraser Forbes, it does not direct the application of those percentages to any specific amount or prior computation. That direction is contained only in the Contract itself, and nothing in the Award incorporates provisions of the Contract in the methodology for calculating the amount of commissions due.

Contrary to Fraser Forbes' assertion, the Award contains no indication of the methodology the Arbitrator used to arrive at the commission due Calcote set out in Paragraph 15(a). The Award only orders payment of a specific amount, $102,524.73. Nothing on the face of the Award indicates that the Contract provisions were the basis for the calculation methodology set

out in Paragraph 15(b), and we reject Fraser Forbes' argument in this regard.

Fraser Forbes also argues that applying the Award in the manner Calcote suggests is "strained and nonsensical." To illustrate its point, Fraser Forbes references the commission award in Paragraph 15(b)(viii) for the Royal Oaks transaction. According to Fraser Forbes, because the Award provided that Calcote would be entitled to 100% of the gross commissions Fraser Forbes received on that transaction, it would be impossible to adjust the Commission award upward as set out in the asterisked sentence under Calcote's interpretation of Paragraph 15(b).

We disagree with Fraser Forbes' interpretation of the asterisked sentence. That sentence states that an award "may be adjusted upward." (Emphasis added). The permissive nature of this provision shows that its application in every case was not contemplated. Because the provision may not apply in a specific instance does not make application of the provision as set out in the Award "strained and nonsensical."

Finally, Fraser Forbes asserts that Calcote is judicially estopped from asserting that the Award should be enforced in a manner other than one consistent with methodology set out in the Contract because Calcote provided the Arbitrator with testimony and written documentation that his commissions on

10

transactions that closed in the future should be determined according to the Contract.  We reject this argument.

Judicial estoppel forbids parties from assuming inconsistent positions in the course of a suit or series of suits with reference to the same set of facts.  Lofton Ridge, LLC v. Norfolk S. Ry. Co., 268 Va. 377, 380-81, 601 S.E.2d 648, 650 (2004).  The positions taken and documents submitted by Calcote calculating commissions on future transactions based on the Contract were submissions made to the Arbitrator relative to the issues in arbitration.  Those issues were resolved by the Award and are not before us now.  The issue in this case is the proper application of the Award, an issue not present in the arbitration.  Judicial estoppel is not invoked under these circumstances.[3]

CONCLUSION

In its final order, the trial court directed that future commissions owed Calcote be calculated based on the Contract between the parties, including Exhibits A and B to that Contract.  The order also indicated that the trial court referenced the same documents to conclude that Fraser Forbes

---

[3] We also reject Fraser Forbes assertion that Calcote failed to preserve certain arguments and assignments of error. Calcote's objections to the order and his motion for reconsideration sufficiently established the arguments made and afforded the trial court the opportunity to consider those assignments of error.

satisfied its debts on the Corro and Reston transactions.  As explained above, nothing in the Award suggests the Contract between the parties should be used to calculate the commissions due under Paragraph 15(b).  Rather, the terms of the Award as written can and must be applied to determine the amount of commissions due Calcote.

Accordingly, the trial court erred because it did not enforce the judgment in a manner consistent with the provisions of the Award.  The judgment of the trial court will be reversed and the case remanded for further proceedings consistent with this opinion.

<u>Reversed and remanded.</u>

| EXHIBIT "A"<br>FRASER-FORBES REAL ESTATE<br>COMMISSION SCHEDULE<br>ALL AGENTS | | |
|---|---|---|
| AGENT COMMISSION<br>DOLLARS | AGENT COMMISSION<br>PERCENTAGE | FRASER-FORBES<br>COMMISSION % |
| 0 TO $37,500 | 50% | 50% |
| $37,501 TO $125,000 | 55% | 45% |
| $125,001 TO $162,500 | 60% | 40% |
| $162,501 TO $200,000 | 65% | 35% |
| Over $200,000 | 70% | 30% |
| | | |

The above Commission Schedule is effective from January 1, through December 31, of any given calendar year. After the year's end and at the beginning of the following year, the commission schedule starts anew with the first percentage split and continues upwards throughout the year.

Commissions are paid to Agent by Broker on the last business day of each month providing the commission check has been deposited and five (5) business days have elapsed. Commissions received after that time will be disbursed on the last business day of the following month.

If Agent terminates, for whatever legal reason, Broker will disburse to Agent all commissions due less ten percent (10%) of the gross commission(s) as a management/service fee.

The two principals of the firm, John Protopappas and Richard Samit are both independent Agents as well as "The House". Their role will be defined on a case by case basis. At times, one or both will be active Agents. At times, one or both will help facilitate deals as "The House". The House is defined as the commission amount that Fraser-Forbes Real Estate receives for its' company share.