COURT OF APPEALS OF VIRGINIA

Present: Judges O'Brien, Ortiz and Lorish
Argued at Fredericksburg, Virginia


BRADLEY R. WOOD AND LINDA J. WOOD,
 TRUSTEES OF THE WOOD FAMILY TRUST
 DATED DECEMBER 19, 2016
                                                    MEMORANDUM OPINION* BY
v.        Record No. 2155-23-4                      JUDGE DANIEL E. ORTIZ
                                                          MAY 20, 2025
GE CUSTOM HOMES LLC


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Tania M.L. Saylor, Judge

Timothy P. Bosson (Robert Rose; Bosson Legal Group, P.C., on
briefs), for appellants.

David C. Gutkowski (Angela M. London; Odin, Feldman &
Pittleman, P.C., on brief), for appellee.


Contract arbitration is a firm fixture of the modern legal landscape, providing parties

flexibility, cost control, and finality. These benefits, however, come at the cost of limited

judicial review; a party facing an unfavorable arbitral decision has few opportunities for relief.

This case does not provide any such opportunity for appellants. After receiving an unfavorable

award in binding arbitration, appellants' counsel researched their arbitrator's background. They

discovered that the arbitrator founded a nonprofit supporting women in the construction industry.

The appellee in this case, GE Custom Homes LLC ("GE"), is a majority-woman-owned

company. The Woods argued in the trial court that these facts rendered the arbitrator evidently

partial, requiring vacatur of the award, because her involvement in an affinity group "would

make her feel like she wanted to benefit" GE. They also argued that the arbitrator exceeded her

_____

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

powers by suggesting that the parties mediate and by returning to her role as arbitrator after serving as mediator. Finally, the Woods argued that the arbitrator miscalculated the award.

The Virginia Uniform Arbitration Act ("VUAA"), Code §§ 8.01-581.01 through 8.01-581.016, establishes limited grounds for judicial interference in an arbitral award. The trial court found that the Woods failed to carry their burden, and, finding no error, we affirm.

BACKGROUND

In 2021, Bradley R. Wood and Linda J. Wood, acting as trustees of the Wood Family Trust, entered into a contract with GE for the construction of a house. The contract provided for construction to take place over 18 months and payment to be made on a draw schedule, including an initial deposit and 8 draw payments that aligned with the phases of home construction. Like most modern commercial contracts, it also included an arbitration provision.

Construction began in January 2022. By May, shortly after GE completed the house's framing, the price of lumber increased significantly to the point that GE threatened to halt construction if the Woods did not compensate it for the difference in cost. Communications broke down between the parties over which party would pay for the difference in lumber price. In May, the Woods made their second previously-agreed-upon draw payment of $215,625, bringing their total amount paid to $413,247. After this payment, GE refused to continue construction, leaving the frame of the house exposed to the elements. In August, the Woods filed for emergency relief before the American Arbitration Association ("AAA") to have GE "secure the property from further damage from the elements" and seeking damages of $300,000 to finish the project.

The AAA typically provides parties an opportunity to review arbitrator biographies and choose who will preside. In cases of emergency relief, however, no such information is provided, and the AAA appoints an arbitrator. Here, the AAA appointed Barbara G. Werther,

Esquire, to preside over the "emergency relief portion of the case." Upon her appointment, Werther submitted an oath form affirming that she had no conflicts of interest and was not "aware of any other information that may lead to a justifiable doubt as to [her] impartiality." After emergency proceedings ended, both parties consented to Werther continuing to serve as arbitrator.

Werther then presided over a two-day final hearing on the contract dispute to determine which party breached the contract and damages. The Woods allege that, at the close of evidence, Werther excused the parties and held a closed-door meeting with the lawyers. Werther told counsel that, in her opinion, they should have mediated and that they should consider it again, stating, "If you make me issue a ruling in this case, neither party is going to like it."

The parties agreed to begin mediation again the next day and signed an agreement that Werther would act as mediator. The agreement also stated: "If the mediation is unsuccessful and the parties resume arbitration, the parties agree that they will not seek to disqualify the arbitrator/mediator because of confidential information the mediator may have learned." After ten days of mediation, Werther presented a settlement offer that both parties rejected. Werther then issued her final award, holding that the Woods were the first to breach and therefore not entitled to completion damages. Werther did, however, award the Woods damages for protective measures including mold sampling and remediation and debris removal. She further held that GE was "entitled to be made whole only for its uncompensated expenditures and for work performed up to [the Woods'] breach," an amount of $160,898 after subtracting the protective damages owed to the Woods. The Woods filed a request to modify or correct the award, arguing that damage to the property for purposes of protective damages was higher than Werther found, and arguing that Werther miscalculated the amount of work GE performed or installed after draw

two.  Werther granted the first request, modifying the award to reflect the recalculation, but denied the latter.

The Woods, upon receiving the unfavorable award, researched Werther's background and found that she co-founded the non-profit Women in Construction, Inc.  Women in Construction's stated mission is to "empower women in the construction industry."  Werther served as its president from 2006 to 2021, and then served on its board at least until she accepted arbitration of this case in 2022.  At the arbitration hearing, the president of GE testified that GE is a "majority woman owned" company.  Based on these facts, the Woods moved the trial court "to vacate or, alternatively, to correct or modify the arbitration award."  They argued that (1) Werther was evidently partial by failing to disclose her involvement with Women in Construction, (2) Werther exceeded her powers by pressuring the parties to mediate and resuming her role as arbitrator post-mediation, and (3) Werther miscalculated the amount GE was owed for work performed after the second draw.

Before a hearing on the motion, GE moved *in limine* to exclude any evidence outside the contract and arbitration award itself to determine whether Werther exceeded her authority and whether she miscalculated the award.  The court agreed, holding that any miscalculation would need to be evident on the face of the award and that it could consider only the arbitration contract and award in determining whether Werther exceeded her power.

At the hearing on the motion to vacate, the trial court issued several additional evidentiary rulings, excluding, inter alia, testimony concerning Werther's involvement in Women in Construction and testimony from the Woods' lead counsel on the closed-door meeting between Werther and parties' counsel.[2]  On evident partiality, the court held that the applicable

---

[2] The Woods challenge these rulings as part of their appeal.  Ultimately, as we explain below, because the Woods' proffers failed to show any prejudice resulting from the trial court's alleged error, we need not examine these rulings in depth.

test was derived from *ANR Coal Company v. Cogentrix of North Carolina, Inc.*, 173 F.3d 493 (4th Cir. 1999), and that, under that test, the Woods failed to demonstrate any relationship between Werther and one of the parties, much less a direct relationship that would satisfy *ANR Coal*. The court also found that Werther did not exceed her power or miscalculate the award. The court accordingly denied the Woods' motions, finding no grounds for vacatur or modification under Code §§ 8.01-581.010 or 8.01-581.011. The Woods appeal.

## STANDARD OF REVIEW

Because "'[a] circuit court's review of an arbitration award is limited to the specific statutory criteria'" contained in the VUAA, a circuit court's denial of an application to vacate, correct, or modify an arbitration award "presents a question of statutory interpretation, which we review de novo." *Meuse v. Henry*, 296 Va. 164, 180 (2018) (quoting *Signal Corp. v. Keane Fed. Sys., Inc.*, 265 Va. 38, 45 (2003)). "[T]he party attacking an arbitration award 'bears the burden of proving the invalidity of the award.'" *Id.* (alteration in original) (quoting *Bates v. McQueen*, 270 Va. 95, 100 (2005)).

## ANALYSIS

On appeal, the Woods raise the same grounds for vacating or modifying Werther's award as they did in the trial court. First, they argue that Werther's involvement in a "Women in Construction" group rendered her evidently partial because GE is a "woman owned" company. Second, they contend that Werther exceeded the scope of her powers by suggesting that the parties mediate, serving as mediator, and then returning to her role as arbitrator in accordance with the mediation agreement signed by the parties. And, third, the Woods argue that Werther miscalculated the award.

For the reasons articulated below, we disagree with the Woods and affirm the trial court's judgment.

I.  Werther did not show evident partiality during arbitration.

Code § 8.01-581.010(2) provides that a court "shall vacate" an arbitration award where "[t]here was evident partiality by an arbitrator appointed as a neutral."  The Woods contend that the award should have been vacated under Code § 8.01-581.010(2) because Werther was evidently partial to GE.  They argue that the circuit court improperly adopted the Fourth Circuit's evident-partiality standard into its analysis and, even under that standard, that it erred in failing to vacate the award.

During the bulk of this appeal's pendency, including at oral argument, Virginia courts had not yet adopted a standard for determining evident partiality under the VUAA.  But that changed with our recent decision in *Garofalo v. Di Vincenzo*, 83 Va. App. 118 (2024).

In *Garofalo*, this Court examined and adopted the Fourth Circuit's standard for determining "evident partiality" under the similar language of the Federal Arbitration Act,[3] set forth in *ANR Coal*.  Under our newly adopted standard, evident partiality exists only when "'a reasonable person would have to conclude that an arbitrator was partial to the other party to the arbitration,' or, in other words, has 'put forward facts that objectively demonstrate such a degree of partiality that a reasonable person could assume that the arbitrator had improper motives.'"  *Garofalo*, 83 Va. App. at 129 (quoting *ANR Coal*, 173 F.3d at 500-01).  The Fourth Circuit's standard, which was formulated after Justice White's concurrence in *Commonwealth Coatings Corporation v. Continental Casualty Company*, 393 U.S. 145 (1968), focuses on the fact that a benefit of arbitration is that arbitrators are people "'of affairs,'" who have "familiarity with the parties' business."  *ANR Coal*, 173 F.3d at 498 (quoting *Commonwealth Coatings*, 393 U.S. at 150 (White, J., concurring)).  By contrast, to hold that the mere "'appearance of bias'" was

_____

[3] The FAA provides for vacatur "where there was evident partiality or corruption in the arbitrators . . . ."  9 U.S.C. § 10(a)(2).

sufficient to vacate the arbitration award—as the *Commonwealth Coatings* plurality did—"would make it 'impractical for persons in the business world to be arbitrators, thereby depriving the parties of the services of those who might be best informed and qualified to decide particular types of cases.'" *Id.* at 498, 499 (first quoting *Commonwealth Coatings*, 393 U.S. at 150 (plurality opinion); and then quoting *Merit Ins. Co. v. Leatherby Ins. Co.*, 714 F.2d 673, 678 (7th Cir. 1983)). Instead, the pragmatic Fourth Circuit test considers "whether the asserted bias is 'direct, definite and capable of demonstration rather than remote, uncertain or speculative' and whether the facts are sufficient to indicate 'improper motives on the part of the arbitrator.'" *Id.* at 500 (quoting *Consolidation Coal Co. v. Local 1643, United Mine Workers of Am.*, 48 F.3d 125, 129 (4th Cir. 1995)). This interpretation dovetails well with the VUAA, which "concern[s] the conclusions that one would draw regarding bias, not just possible impressions." *Garofalo*, 83 Va. App. at 133.

Under the *Garofalo*/*ANR Coal* framework, the reviewing court applies four factors to determine whether there was evident partiality by the arbitrator:

> (1) the extent and character of the personal interest, pecuniary or otherwise of the arbitrator in the proceeding; (2) the directness of the relationship between the arbitrator and the party [s]he is alleged to favor; (3) the connection of that relationship to the arbitration; and (4) the proximity in time between the relationship and the arbitration proceeding.

*Id.* at 126 (quoting *ANR Coal*, 173 F.3d at 500). Here, we easily find that the Woods have failed to carry their "burden of proving the invalidity of the award." *Bates*, 270 Va. at 100 (quoting *Trs. of Asbury United Methodist Church v. Taylor & Parrish, Inc.*, 249 Va. 144, 153 (1995)).[4]

---

[4] Alongside each of their substantive arguments, the Woods assert numerous errors in the trial court's evidentiary rulings. When a court declines to admit evidence, "an appellate court has no basis for adjudication unless the record reflects a proper proffer." *Va. Bd. of Med. v. Zackrison*, 67 Va. App. 461, 485 (2017) (quoting *Massey v. Commonwealth*, 67 Va. App. 108, 132 (2016)). "For a proffer to be sufficient, it must allow us to examine both the 'admissibility of the proposed testimony,' and whether, even if admissible, its exclusion '*prejudiced*' the

First, Werther had no "personal interest, pecuniary or otherwise" in the proceeding. The Woods' assertion that Werther "fe[lt] like she wanted to benefit" GE—because it is woman-owned and because Werther was once involved in an affinity group supporting women—is exactly the sort of "remote, uncertain or speculative" connection that courts have repeatedly held cannot warrant vacatur. *Garofalo*, 83 Va. App. at 126 (quoting *ANR Coal*, 173 F.3d at 500). As the *ANR Coal* court noted, arbitrators are people "of affairs" who have typically achieved professional success in their respective fields, 173 F.3d at 489; such individuals are likely to become involved in professional organizations, including affinity or interest groups, as they progress through their careers. To the extent Werther's involvement in Women in Construction created any "interest," it is a general one, applying to women as a whole in the industry. The Woods have failed to show that any purported interest by Werther was "direct, definite, and capable of demonstration" in the dispute at hand, as is required under Code § 8.01-581.010(2). *Garofalo*, 83 Va. App. at 126 (quoting *ANR Coal*, 173 F.3d at 500).

For similar reasons, the second, third, and fourth *Garofalo/ANR Coal* factors fail altogether because there was no "relationship" between Werther and GE. The Woods argue that the trial court erred by "narrowly interpreting the four-factor test to require a *direct* relationship between the arbitrator and one of the parties." But, as we have already explained, that is exactly what is required to show evident partiality. We therefore agree with the trial court that the Woods failed to "tie" Werther to GE, specifically.[5]

---

proffering party." *Id.* (emphasis added) (quoting *Massey*, 67 Va. App. at 132). In this case, we need not determine if the trial court erred because, as our analysis demonstrates, even if the evidence was admissible, the Woods' proffers fail to demonstrate that any exclusion was "prejudicial" because the additional evidence would only have reinforced failing arguments. *Id.* (quoting *Massey*, 67 Va. App. at 133).

[5] The Woods further argue that the Rules of Arbitration and the Code of Ethics for Arbitrators in Commercial Disputes contemplate less direct connections that could give rise to partiality. But, "[w]hen parties agree to be bound by the AAA rules, those rules do not give a . . .

In sum, the Woods fail to demonstrate any "direct, definite" connection such that "a reasonable person would have to conclude" that Werther was partial to GE. We accordingly affirm the trial court's denial of the Woods' motion to vacate on those grounds.

## II. Werther did not exceed the scope of her authority.

Code § 8.01-581.010(3) requires a court to vacate an arbitrator's award where "[t]he arbitrators exceed their powers." The Woods contend that Werther exceeded her powers in two ways: first, by "exerting pressure" on the parties to mediate; and, second, by returning to her position as arbitrator after acting as mediator.

At the hearing on the motion to vacate, the trial court declined to admit testimony from the Woods' lead counsel describing what occurred during the closed-door meeting between Werther and the parties' lawyers on hearsay grounds. The Woods' proffered that, during that meeting, Werther said something to the effect of, "If you make me issue a ruling in this case, neither party is going to like it." According to the Woods, they "never requested mediation" and "in fact, . . . objected to the idea of mediation." They argue that Werther's admonition impermissibly pressured the parties to enter into mediation, in contravention of the AAA Code of Ethics for Arbitrators in Commercial Disputes, which Werther was contractually required to follow. Specifically, Canon IV, Section (F) provides,

> Although it is not improper for an arbitrator to suggest to the parties that they discuss the possibility of settlement or the use of mediation, or other dispute resolution processes, an arbitrator should not exert pressure on any party to settle or to utilize other dispute resolution processes. An arbitrator should not be present or otherwise participate in settlement discussions or act as a mediator unless requested to do so by all parties.

---

court license to vacate an award on grounds other than those set forth in" the VUAA. *ANR Coal*, 173 F.3d at 499. As discussed, to satisfy Code § 8.01-581.010(2), a party must demonstrate a direct relationship, and, here, the Woods have failed to make that showing.

For its part, GE argues that the Woods were not pressured into mediation but rather consented by voluntarily signing the mediation agreement. We agree with GE.

"Arbitrators derive their authority solely from the parties' contractual agreement to arbitrate disputes arising under the contract. Thus, arbitrators exceed the scope of their authority when they purport to act beyond the terms of the contract from which they draw their authority." *Asbury United Methodist Church*, 249 Va. at 153. To the extent an arbitrator violates those rules, she has exceeded her authority. In this case, the Woods' assignment fails because Werther simply did not violate the terms of the agreement, by "exert[ing] pressure" or otherwise.

To start, the language of Canon IV, Section (F) is advisory—"an arbitrator *should* not exert pressure on any party" to settle or mediate. (Emphasis added). Thus, the terms of the parties' arbitration agreement, via the AAA Code of Ethics, vested Werther with a degree of discretion in how she handled conversations exploring other types of dispute resolution. *See Huffman v. Kite*, 198 Va. 196, 199 (1956) (distinguishing language that is "mandatory" from language that is "merely advisory, and thus only directory"); *Nelms v. Vaughan*, 84 Va. 696, 699 (1888) (explaining that language is "merely directory" when "there is no intimation that [the directives] must be done or all will be vitiated"); *cf. Harper v. Va. Dep't of Tax'n*, 250 Va. 184, 194 (1995) (distinguishing language that is "permissive" and therefore "import[s] discretion" from language that is "mandatory"). Further, Werther did not "exert pressure" on the Woods to settle by advising the parties to mediate. GE correctly points out that the Woods were represented by two competent attorneys during arbitration proceedings. It is not uncommon for adjudicators of all types to forecast their initial views on an issue during a hearing or trial to help guide lawyers' arguments—indeed, such forecasting is usually extremely valuable to the

attorneys.[6] The Woods assert they were "[f]earful of disagreeing with" Werther about her suggestion to mediate. But this is exactly what competent counsel is called upon to do if convinced that it is in the client's best interest. *See* Va. R. Pro. Conduct 1.3 cmt. 1 ("A lawyer should pursue a matter on behalf of a client despite opposition, obstruction or personal inconvenience to the lawyer . . . ."). It was entirely permissible—helpful, even—for Werther to forecast to the parties that, in her view, mediation presented a more constructive path forward. If counsel for the Woods disagreed, the proper response was saying so, not acquiescing while silently reserving doubts. We accordingly decline to find that Werther "exert[ed] pressure" impermissibly and exceeded her powers.

The Woods also assert that Werther exceeded her authority by returning to her position as arbitrator after serving as mediator, despite having contracted for her to do so. The Woods rely on one New Jersey case for this argument, *Minkowitz v. Israeli*, 77 A.3d 1189 (N.J. Super. Ct. App. Div. 2013), which vacated an award after an arbitrator facilitated settlement between the parties. The *Minkowitz* court noted "the distinction between the roles of the facilitator in a mediation and the factfinder in an arbitration," and found that the arbitrator, in those circumstances, "exceeded his powers by acting as both a mediator and an arbitrator." *Id.* at 1204-05, 1210. In *Minkowitz*, however, the arbitrator never formally agreed to become a mediator. *Id.* at 1211. And the court specifically limited its holding by stating that, "*absent the parties' agreement*, an arbitrator appointed under the Act may not assume the role of mediator and, thereafter, resume the role of arbitrator." *Id.* at 1208 (emphasis added).

---

[6] Judicial forecasting is improper where it may influence laymen such as jury members, *see Holober v. Commonwealth*, 191 Va. 826, 839 (1951), but that was not the case here. Neither party was present, and both attorneys were at little risk of coercion simply because the arbitrator did not seem persuaded by their arguments (something experienced litigators must be prepared to face in any proceeding).

Here, the Woods *signed an agreement* permitting Werther to continue acting as arbitrator should mediation fail. In fact, they specifically agreed that "they w[ould] not seek to disqualify" her if they resumed arbitration. *Minkowtiz* is thus inapposite. We also note that Canon IV, Section (F) of the Code of Ethics specifically contemplates that an arbitrator may switch hats to become a mediator if she is "requested to do so by the parties." Here, the Woods would characterize their conduct as something other than a "request[]," but we struggle to see how their express assent to an agreement authorizing Werther to continue as arbitrator could be anything else. We therefore decline to disturb the situation into which the Woods entered by their own free will.

In sum, Werther did not "exceed [her] powers" under Code § 8.01-581.010(3) either by suggesting that the parties mediate or by returning to her role as arbitrator after mediating at the parties' request. We accordingly affirm the trial court's denial of the Woods' motion to vacate on those grounds, as well.

### III. There was no evident miscalculation in the award.

Code § 8.01-581.011(1) provides that a court "shall modify or correct" an arbitrator's award where "[t]here was an evident miscalculation of figures." The Woods contend both that Werther miscalculated the award and that the trial court erred in failing to consider the arbitration record in evaluating whether there was miscalculation. Neither this Court nor our Supreme Court has yet interpreted Code § 8.01-581.011 to determine what constitutes an "evident miscalculation." We must therefore determine the appropriate standard before analyzing the Woods' argument.

To begin, we observe that Virginia courts' "power to modify an arbitration award is very limited." *Calcote v. Fraser Forbes Co., LLC*, 270 Va. 399, 403 (2005). "Code §§ 8.01-581.08, 8.01-581.010, and 8.01-581.011 provide the sole mechanisms in the [VUAA]" for challenging

errors in an arbitration award. *Marks v. Marks*, 36 Va. App. 216, 223 (2001). As such, these Code provisions evince a clear intent by the General Assembly that courts are not to usurp the "authority conferred" on an arbitrator "by the parties in their arbitration contract," except in very limited circumstances. *Cotton Creek Circles, LLC v. San Luis Valley Water Co.*, 279 Va. 320, 325 (2010). In the context of § 8.01-581.010, our Supreme Court has held that our deference to arbitrators is so strong that an award may not be vacated even for "serious errors" of contract or law interpretation. *Id.*; *see also Signal Corp.*, 265 Va. at 46 ("Conspicuously missing from [§ 8.01-581.010] is a provision that permits a court to vacate a judicial award when the arbitration panel has exhibited a 'manifest disregard of the law.'"). It is with these principles in mind that we examine the appropriate standard for determining an "evident miscalculation" under § 8.01-581.011.

Recall that, happily, the language of the VUAA closely mirrors the FAA, and Virginia courts have consistently "cited FAA cases to help construe the VUAA." *Garofalo*, 83 Va. App. at 126; *compare* 9 U.S.C. § 11(a), *with* Code § 8.01-581.011(1). Federal courts espouse similar principles of deference to arbitral decisions under the FAA. *See, e.g.*, *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 572-73 (2013) ("[C]onvincing a court of an arbitrator's error—even his grave error—is not enough. So long as the arbitrator was 'arguably construing' the contract . . . a court may not correct his mistakes under [the FAA]. *The potential for those mistakes is the price of agreeing to arbitration.*" (emphasis added) (citation omitted)).

With respect to reviewing a valuation, specifically, the Fourth Circuit has stated that "the scope of review of an arbitrator's valuation decision is among the narrowest known at law because to allow full scrutiny of such awards would frustrate the purpose of having arbitration at all—the quick resolution of disputes and the avoidance of the expense and delay associated with litigation." *Apex Plumbing Supply v. U.S. Supply Co.*, 142 F.3d 188, 193 (4th Cir. 1998)

(footnote omitted). Thus, in the Fourth Circuit, "[w]here no mathematical error appears on the face of the award," *id.* at 194 (quoting *Apex Plumbing Supply, Inc. v. U.S. Supply Co.*, Civ. No. AW-96-3362v, 1997 U.S. Dist. LEXIS 24760, at *6 (D. Md. Feb. 20, 1997)), there is no "evident material miscalculation" within the meaning of the FAA, *Apex Plumbing Supply*, 1997 U.S. Dist. LEXIS 24760, at *4.  A miscalculation is only "evident" if it "appear[s] on the face of the arbitration award."  *Apex Plumbing Supply*, 142 F.3d at 194.  Many other courts, including the Fourth Circuit, that have interpreted "evident miscalculation" language have similarly held that there must be a *mathematical* error on the face of the award; the use of an incorrect formula or inclusion of an incorrect element in the award computation is not sufficient.[7]

The Fourth Circuit and our sister states' approach to reviewing an arbitrator's valuation reflects Virginia's strong principles of deference to arbitral awards.  Accordingly, as in *Garofalo*'s analysis of Code § 8.01-581.010, we agree with this practical interpretation of nearly identical language in the FAA, and find it applies to our review under Code § 8.01-581.011(1).  Where Virginia courts have repeatedly held neither a "serious error[] of interpretation," *Cotton Creek*, 279 Va. at 325, nor a "manifest disregard of the law," *Signal Corp.*, 265 Va. at 46, are sufficient to vacate an arbitration award under § 8.01-581.010(3) and its federal analogue, we likewise hold that neither an incorrect application of a formula nor inclusion of an incorrect factor in calculating an award are sufficient to modify it under § 8.01-581.011(1).  A miscalculation is "evident" only if it "appear[s] on the face of the arbitration award."  *Apex*

---

[7] *See, e.g.*, *Apex Plumbing Supply*, 142 F.3d at 194; *Cranney v. Mut. of Enumclaw Ins. Co.*, 175 P.3d 168, 171 (Idaho 2007) ("The evident miscalculation of figures . . . must be a mathematical error in calculating the amount of an award, not a legal error in the elements or measure of damages when making the award."); *Jones v. Summit Ltd. P'ship Five*, 635 N.W.2d 267, 271 (Neb. 2001); *Beard v. Edward D. Jones & Co.*, No. 57142-7-I, 2006 Wash. App. LEXIS 1913, at *5 (Aug. 28, 2006); *N. Boulevard Plaza v. N. Boulevard Assocs.*, 526 S.E.2d 203, 205 (N.C. Ct. App. 2000).

*Plumbing Supply*, 142 F.3d at 194.  Mistakes that fail to meet that standard are simply "the price of agreeing to arbitration."  *Oxford Health Plans*, 569 U.S. at 572-73.[8]

Here, we find no evident miscalculation.  The Woods do not contend that a *mathematical* error is present on the face of the award.  Instead, they ask us to examine the arbitral record ourselves and find that Werther "wrongfully included . . . two figures in her calculation."  Even assuming that the inclusion of these two figures was error, this is exactly the type of judicial review that Code § 8.01-581.011 prohibits.  Werther was contractually empowered to exercise discretion in calculating an award, and § 8.01-581.011 places firm limits on our ability to interfere.  Looking at the face of that award, Werther determined that GE "installed $177,998" worth of work from the time of the second draw payment to the time of the Woods' breach.  Werther then found that GE was "entitled to an award of $177,998 less protective measures" in the amount of $17,100 to the Woods, for a final net award of $160,898.  Simply put, we see no mathematical error in this calculation, and we decline to interfere with the parties' chosen form of dispute resolution by coming up with new figures ourselves.  We accordingly affirm the trial court's judgment.

CONCLUSION

The VUAA establishes limited grounds for judicial interference in an arbitral award.  We find that this case provides none.  Contrary to the Woods' assertions, Werther did not exhibit

---

[8] The Woods rely on the Fifth Circuit's standard, which allows a court to modify an award under the FAA if there was a "mistake of fact and the record demonstrates strong reliance on that mistake by the arbitrator."  *Valentine Sugars, Inc. v. Donau Corp.*, 981 F.2d 210, 214 (5th Cir. 1993).  But we decline to read this more expansive language into the VUAA's requirement that a miscalculation be "evident."  *See Evident*, *Oxford English Dictionary* (2d. ed. 1995) ("Of something physical; distinctly visible; conspicuous . . . . [O]f a state or condition: obvious to the sight; recognizable at a glance."); *see also Signal Corp.*, 265 Va. at 46 ("In this Commonwealth, courts are required to apply the plain meaning of statutes, and we are not free to add language, nor to ignore language, contained in statutes.").

"evident partiality" or exceed her powers, and there was no "evident miscalculation" on the face of the final award. We accordingly affirm the trial court's judgment.

*Affirmed.*